# Citizen's L. H. & P. Co. v. Lee.

### *Injury to Servant.*

(Decided February 13, 1913.  Rehearing denied April 23, 1913.
62 South. 199.)

1. *Death; Damages; Exemplary.*—In an action under the Employer's Liability Act by the personal representative of a servant for injuries resulting in death, the damages are compensatory only, and not punitive.

2. *Same.*—In an action under the homicide act by a personal representative of a servant for injuries resulting in his death, where, if such act had not caused death, the servant could have maintained an action, the damages are punitive only.  (Sec. 2486, Code 1907.)

3. *Same; Evidence.*—In an action by a personal representative for damages for injuries resulting in the death of a servant, evidence as to the age, habits, etc., of his intestate was admissible on the question of damages.

4. *Appeal and Error; Harmless Error; Pleading.*—Where the trial was had upon the general issue and pleas of assumption of risk and contributory negligence pleaded by consent under which any defenses were available on the same degree of proof as would have availed under the special pleas, any error in the rulings on the special pleas was harmless.

5. *Same; Review; Presumption.*—Where the personal representative of a servant killed by the negligence of defendant, made it to appear that a liability insurance company would be responsible for any judgment against defendant to the extent of $5,000, it will be presumed that the court instructed that the fact of the liability of the insurance company should not affect the verdict of the jury.

6. *Master and Servant; Wrongful Death; Complaint.*—A complaint alleging that defendant's superintendent negligently ordered plaintiff's intestate, a lineman, to go upon a pole which supported electric wires, knowing that the position was dangerous and not warning intestate of such dangers, which were unknown to intestate, and that intestate was shocked by a current and caused to fall to the ground, and was killed as a proximate result thereof, alleged a good cause of action as against a demurrer that it failed to state a cause of action, and that it did not show what act of negligence the superintendent was guilty of.

7. *Same.*—A complaint alleging that defendant's superintendent negligently ordered plaintiff's intestate to go upon a pole which supported electric wires, knowing that the place was dangerous, and failing to warn intestate of such danger, which was unknown to intestate; that intestate was bound to obey the orders of such superintendent, and while on the pole was shocked and killed, was good as against the demurrers interposed to it.

8. *Same; Safe Place to Work.*—A complaint alleging that defendant failed to provide plaintiff's intestate, a servant, with a reasonably safe place in which to work under his employment, was good as against demurrers that it did not show in what particular defendant failed to provide plaintiff's intestate with a reasonably safe place in which to work.

9. *Same; Defective Appliances.*—Where the action was by the administrator for the wrongful death of her intestate, a lineman of the defendant company, caused by shock and fall from the pole, a complaint alleging that the wires and poles were a part of the ways, works, etc., in the language of the statute, such complaint was sufficient, since it was not necessary to allege or prove that the master owned the defective appliances forming a part of the ways, etc.

10. *Same.*—A master cannot avoid the duty imposed by the statute or escape liability thereunder by using the machinery or appliances of others, as the statute only requires that such instrumentalities be connected with, or used in the business of the master.

11. *Same; Safe Place to Work; Duty of Electric Company.*—An electric company owes the duty to its employees and especially to its lineman, of exercising reasonable care that they shall have a reasonably safe place in which to work.

12. *Same; Inspection.*—An electric company owes to its employees and especially to its lineman, reasonable care to see that needed and proper repairs and inspections of its premises and appliances are made, so that they may continue safe for use.

13. *Same; Duty to Warn.*—If the employees are without knowledge on the subject, it is the duty of an electric company to exercise reasonable care to warn them of dangerous premises or machinery which they are required to use.

14. *Same; Jury Question.*—Where there was evidence tending to support each count of the complaint on which the cause was tried, and under the evidence the issues of contributory negligence and assumption of risk were for the jury, the court could not properly direct a verdict for defendant.

15. *Same; Assumption of Risk; Knowledge of Defect.*—A servant cannot be held to have assumed the risk of defects in the ways, works, etc., of the master of which he had no notice or knowledge, and with which he was not charged with such notice or knowledge.

16. *Same.*—A servant assumes the ordinary risk incident to his employment, but not that of the negligence of the master or superintendent or risks incident to the breach of the common law or statutory duty.

17. *Same; Instruction.*—Where the action was for the death of a servant killed by a shock causing him to fall from a pole, a charge

asserting that if the pole was obviously dangerous, and intestate knew of the danger at the time he worked upon it, under .orders of the superintendent of defendant. he thereby proximately contributed to his injuries, was properly refused as misleading.

18. *Same.*—Under a count charging defects in the ways, works, etc., of the master and the negligence of persons charged with seeing that they were in proper condition, and a failure to warn of latent dangers, a charge that if the intestate was himself guilty of negligence proximately contributing to his injuries, in that, after knowledge that the pole was strung with charged wires not perfectly insulated, and that contact therewith was dangerous, he negligently went upon the pole, and was shocked and killed, he could not recover, was objectionable as being uncertain as to the counts to which it referred.

19. *Same; Indefiniteness.*—Under counts alleging defects in appliances, negligence of superintendent, and a failure to warn of danger, an instruction that if intestate was an experienced lineman. and if the defects were obvious to and known to him, and his work upon the pole proximately contributed to his injury and death, he could not recover. was indefinite and uncertain as to the defects referred to, and misleading.

20. *Charge of Court; Form.*—Charges beginning with the statement "to counts numbered 3 and 4 separately and severally it pleads, etc.," were bad in form and in the manner in which they referred to the complaint.

21. *Same; Abstract.*—Where there was no evidence that plaintiff's intestate was charged with, or was under the duty to inspect the pole, or was guilty of any negligence in inspection, a charge asserting that if it was the duty of intestate to report any defect in the pole to defendant, and if he negligently failed to perform such duty and was injured as a result thereof, he could not recover, was abstract.

22. *Same; Invading Jury's Province.*—Where under the evidence the amount of damages was a question for the jury, the charge that if a plaintiff could recover, he could recover only nominal damages, was inherently bad.

23. *Evidence; Expert.*—A witness qualified as an expert may testify as to how long it was necessary to enable one to become an experienced lineman.

24. *Jury; Competency.*—The law requires that jurors should be free from bias or prejudice, impartial and indifferent to the result of the suit, except as directed by the evidence and the law.

25. *Same; Interest.*—As one cannot be a juror in his own case, a master is not a qualified ·juror in the case of his servant against him, nor the servant in the master's case; an attorney is not qualified as a juror in his client's case; a principal in his agent's case in the matter of the agency; nor the agent in his principal's case; and the relation of landlord and tenant also disqualifies the parties so related as jurors.

26. *Same.*—The statutory disqualifications of jurors are not the only disqualifications that exist, or that will be enforced, but disqualification existing at common law will be observed in passing upon the competency of jurors in both civil and criminal cases.

27. *Same.*—Where an insurance liability company would be liable for the judgment rendered against the defendant employer in an amount not exceeding $5,000, it had such a pecuniary interest in the suit as to render its stockholders, officers, agents and servants disqualified as jurors in such case.

28. *Same; Objection; Waiver.*—While there is no fixed rule of law by which the courts can be informed or should ascertain the disqualification of jurors. it should be done before the trial, as otherwise, the parties may be held to have waived the ground of challenge or disqualification.

29. *Same; Time and Mode of Challenge.*—As far as possible, information to the court as to the disqualification of jurors ought to be given in such a manner, and at such a time as not to prejudice jurors, otherwise disqualified, against the rights of either party, and any attempt by counsel to get before the jury the fact that parties other than the litigants will be injured or benefited by their verdict, for the purpose of biasing the jury, and not for the purpose of ascertaining their qualifications or fitness, will not be tolerated by trial or appellate court.

30. *Same; Motion to Waive.*—The plaintiff had a right to move the court to qualify the jurors as to their being employees, stockholders or parties interested in a liability insurance company which would he in part liable for any judgment rendered against defendant, and to show that the material matters set forth in the motion were true, in the absence of knowledge that none of the jurors were thereby disqualified.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by Eugenia S. Lee, as administratrix against the Citizens' Light, Heat & Power Company, for damages for the death of her intestate. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 2 is as follows: The plaintiff, as administratrix of the estate of J. H. Lee, Jr., deceased, claims of the defendant the sum of $25,000 as damages, for that, to wit, on November 26, 1910, the defendant was engaged in the business of operating in the city of Montgomery, Ala., an electric lighting plant or company, and on, to wit, said day and date, in said state and county, plaintiff's said intestate was a servant or employee of the defendant, in the service or business of the defendant, and then and there, while in the performance of his duties as such servant or employee, he was upon a·

certain pole, then and there supporting a number of wires, one of which wires was then and there charged with electricity, and while plaintiff's said intestate was upon said pole as aforesaid in the performance of his duties, a current of electricity from said wire passed into his body, shocking him and causing him to fall to the ground or pavement below, and thereby, as a proximate result thereof, he died. And plaintiff avers that her said intestate received said injuries as a proximate result and consequence of a defect in the condition of the ways, works, machinery, or plant connected with or used in the business of defendant, which defect arose from, or had not been corrected or discovered owing to, the negligence of defendant, or of some person in the service of defendant and intrusted with the duty of seeing that the ways, works, machinery, etc., were in proper condition, in this: That the said wire, which was charged with electricity as aforesaid, was defective. Count 3 is the same as 2, as to the method of the infliction of the injury, and avers the negligence of a certain person whose name is J. N. Jackson, who was then and there in the service or employment of defendant, and who then and there had superintendence over plaintiff's intestate intrusted to him, while in the exercise of such superintendence, which negligence consisted in the said Jackson, while in the exercise of such superintendence, negligently ordering and instructing plaintiff's intestate to go upon said pole, knowing at the time that said place where he ordered said intestate to go as aforesaid was dangerous, and did not notify or warn said intestate of said danger, which said dangers were latent and unknown to intestate. Count 4 is the same as 3, except that it alleges that intestate at the time of said injury was bound to conform to the orders of said Jackson and did conform, and as a result of

having so conformed, was injured, and that the negligence consisted in Jackson's ordering plaintiff's intestate to go upon said pole, knowing at the time of giving said order that said pole or wires attached thereto were charged with electricity, and that it was dangerous to go upon said pole, and did not warn plaintiff's intestate thereof. Count 5 alleges the negligence of the defendant in failing to provide intestate with a reasonably safe place in which to do his work under his employment.

The demurrers to the second count raise the question that it is not alleged or shown that the pole upon which the electric wires were strung was a part of the ways, works, etc.; and that it was not alleged or shown that the wire alleged to have been charged with electricity was a part of the ways, works, etc.; and that it is not shown whether said line was a part of the ways or part of the works, or part of the machinery, or part of the plant of the defendant; and that it is not alleged in what manner the said wire was defective, and no causal connection is shown between the defect complained of and the injury. To the third count, that it fails to state a cause of action; that it is not shown what act of negligence the person intrusted with superintendence was guilty of. The fourth count same grounds as the third, and that it fails to allege that plaintiff's intestate did not know the danger of going upon the pole, and fails to allege that the danger was not apparent or obvious, and it is not shown that the order contributed to the injury complained of. To the fifth count, that it is not shown in what particular the defendant failed to provide plaintiff's intestate with a reasonably safe place to work, etc. The defense was that the intestate was an experienced lineman at the time of the injury and at the time he was instructed to climb the pole, and that it was his duty to examine said pole for the purpose of de-

termining whether or not it could be safely worked upon, and that he failed and neglected to make the examination; also, that the ordinary duty as a lineman required the stringing of high voltage wires upon poles, and that the danger of falling was one of the risks incident to his employment, and that the danger of coming into contact with such wires was also a risk incident to the employment. There were several other pleas not necessary to be set out.

(A) If the jury believe from the evidence that plaintiff's intestate was himself guilty of negligence which proximately contributed to his injury, and that his said negligence consisted in this, that after knowledge that the said pole was strung with a large number of electric light wires running in different directions and across said pole, some of which were charged with high voltage power of electricity, and which were not perfectly insulated, and that coming in contact with said wires without himself being fully isulated was highly dangerous, and with the knowledge that if he came in contact with the said wires without it or himself being fully insulated that injury would result to him, nevertheless plaintiff's intestate negligently went upon said pole, and negligently came in contact with the said wire without himself or said wire being fully insulated, and as a proximate consequence of which he fell from said pole and was injured, plaintiff cannot recover upon either counts 1, 2, or 5 of the complaint.

(C) If the jury believe from the evidence that the pole upon which plaintiff's intestate was injured was obviously dangerous, and plaintiff's intestate knew the said danger at the time he climbed upon the same in accordance with the orders of the defendant's superintendent, and thereby proximately contributed to his

injury, plaintiff cannot recover under the second or third counts of the complaint.

(G) If the jury believe from the evidence that plaintiff's intestate was the person in defendant's employment, whose duty it was to report any defect of said pole to the defendant, and he negligently failed to perform that duty, and as a result of such failure he was injured as a proximate result of his own negligence, plaintiff cannot recover.

(E) If the jury believe from the evidence that plaintiff's intestate was a man experienced in doing line work, and experienced in handling wires heavily charged with electricity, and the defects complained of in said count were obvious to plaintiff's intestate, and therefore plaintiff's intestate knew or was charged with knowledge of the dangerous condition, and with knowledge of said defect and dangerous condition he negligently climbed upon said pole and came in contact with said defective wire, and thereby proximately contributed to his own injury, plaintiff cannot recover on either count.

13) The court charges the jury that, under the evidence in this case, if the plaintiff is entitled to recover at all, she cannot recover more than nominal damages.

The oral charge excepted to is as follows: If, however, you reasonably find that he would have given her a greater sum, that he was young, sober, industrious, apt, and that his value from an earning capacity increasing, you might take that into consideration along with the other evidence, and say what is just and right under the evidence in this case; this portion of this charge having been given in connection with the rule as to expectancy, and the amount of the verdict based on his saving capacity.

[Citizens' L. H. & P. Co. v. Lee.]

BALL & SAMFORD, for appellant. As to questions arising out of the motions of plaintiff to qualify the jury, and the resulting prejudice to defendant, attention is directed to the following cases.—82 Pac. 271; 38 Wash. 290; 81 Pac. 831; 101 Ill. App. 500; 14 N. Y. Ann. C. 52; 127 Wis. 332; 129 Wis. 98. In considering this case the final question is was the master guilty of a breach of duty to the servant, which arose either from a contract express or implied, limiting liability to those obligations arising under the contract.—*Jones v. Granite Mills,* 127 Mass. 84; *Tobler v. Pioneer M. & M. Co.,* 166 Ala. 506. A higher degree of care is exacted of a practical electrician than of an unskilled man in dealing with electricity and its appliances.—58 Am. St. Rep. 114. Linemen assume the usual, ordinary and obvious risks incident to the particular engagement.—*Mobile E. Co. v. Sanges,* 169 Ala. 353; 26 Cyc. 1177. Where danger is open, obvious and patent, it is presumed to be known to the servant.—5 Mayf. 629. The plaintiff's intestate was guilty of contributory negligence and cannot recover.—*Reed v. Sloss-S. S. & I. Co.,* 58 South. 301; *Kilby F. & S. Co. v. Jackson,* 57 South. 691. Where a superintendent orders an employee to perform a duty obviously dangerous, and the servant fully understands it, he assumes the risk of his particular danger.—*Coosa M. Co. v. Williams,* 133 Ala. 606; *A. G. S. v. Brooks,* 135 Ala. 401; *L. & N. v. Henley,* 56 South. 531. The damages are compensatory and not exemplary.—*L. & N. v. Orr,* 91 Ala. 548. Count 5 does not meet the requirements laid down in the following cases.—*Meriwether v. Sayre M. & M. Co.,* 161 Ala. 441; *Sloss-S. S. & I. Co. v. Triplett,* 58 South. 108. The court erred in sustaining demurrers to the pleas of contributory negligence and assumption of risk.—*Mobile E. Co. v. Sanges, supra.* Counsel discuss the admission of evi-

dence and the refused charges, in the light of the foregoing authorities with insistence that error intervened.

HILL, HILL, WHITING & STERNE, for appellee. The grounds of challenge enumerated in the Code are not exclusive, and the court was not in error in hearing the motion to qualify the jurors, and in taking proof of the material matters alleged therein.—*Birdsong v. State,* 47 Ala. 68; *Smith v. State,* 55 Ala. 1; *Finch v. State,* 81 Ala. 41; *Carr v. State,* 104 Ala. 4 and 43; *Wickard v. State,* 109 Ala. 45; *Thomas v. State,* 113 Ala. 139.; *Scott v. State,* 133 Ala. 115; *Barden v. State,* 145 Ala. 1; *Brazzelton v. State,* 66 Ala. 98; 24 Cyc. 269. Count 2 was not subject to the demurrer interposed.—*Jackson L. Co. v. Cunningham,* 141 Ala. 206; *Bir. R. M. v. Rockhold,* 143 Ala. 115; *Sloss-S. S. & I. Co. v. Hutchinson,* 144 Ala. 221; *West P. C. Co. v. Andrews,* 150 Ala. 368. It is not essential that the master own the instrumentalities, but only that they be connected with or be used in the business of the master.—Sec. 3910, Code 1907. Count 5 was not subject to the demurrers.—*Smith v. Watkins,* 55 South. 611; *Sloss-Sheffield v. Triplett,* 58 South. 108; *Woolf v. Smith,* 149 Ala. 457; *Gray Eagle Co. v. Lewis,* 161 Ala. 417. An electric company primarily owes to its employees the duty to see that its poles and appliances are kept in proper and safe condition.—*Mobile E. Co. v. Sanges,* 53 South. 176; *A. C. C. & I. Co. v. Hammond,* 156 Ala. 257; Bailey's M. & S. 108; 4 Thomp. on Neg. secs. 3763, 3767, 3781, 3782, and 4018. If there was any error in the rulings on the special pleas it was harmless as the case was submitted on the general issue, and pleas of contributory negligence and assumption of risk in short by consent.—*Buford v. Christian,* 149 Ala. 343; *Creola L. Co. v. Mills,* 149 Ala. 474; *N. C. & St. L. v. Karthaus,* 150 Ala. 633. The witness qual-

ified as an expert and could properly testify how long it took one to become an experienced lineman.—17 Cyc. 199, 208; 9 S. W. 175; 64 Am. Dec. 325. The court properly refused the affirmative charge to the complaint and each count thereof.—*So. Ry. v. McGowan,* 149 Ala. 440; *L. & N. v. Davis,* 91 Ala. 487. There is no merit in the contention that plaintiff's intestate assumed the risk, or was guilty of contributory negligence.—*So. Ry. v. McGowan, supra; Wes. S. Co. v. Bain,* 163 Ala. 263; *Tallassee Co. v. Moore,* 158 Ala. 368; *Grasselli Co. v. Davis,* 52 South. 35; *N. C. & St. L. v. Brantley,* 53 South. 308; *Briggs v. Tenn. Co.,* 163 Ala. 239; *L. & N. v. Bradley,* 55 South. In the light of these authorities, counsel insist that there is no error in the charges refused to defendant nor in the oral charge of the court.

MAYFIELD, J.—This is an action by an administratrix to recover damages for the wrongful death of her intestate. It is brought under the homicide provision of the Employers' Liability Act (Code, § 3912), and not under the statute known as the Homicide Statute (Code, § 2486). As has been repeatedly decided by this court, the measure of damages, in actions brought under the one, is entirely different from that in actions brought under the other, statute. Under the one the damages are compensatory only, while under the other they are punitive only. That there is no reason for such a distinction has been reiterated by this court; but these statutes were so construed and have been repeatedly readopted without change and with this construction placed upon them. The intestate in this case was a lineman in the employ of the defendant electric company and was working in that capacity at the time he met his death, which was in an attempt to climb an electric pole upon which the electric wires of the em-.

ployer were strung. In some respects this case is similar to the *Sanges Case,* reported in 169 Ala. 353, 53 South. 176, Ann. Cas. 1912B, 461.

Numerous counts were filed in this case unnecessary to be noticed for the reason that they were eliminated from the case, and eliminated upon grounds of which the appellant does not and cannot complain on this appeal. The case was ultimately tried on counts 2, 3, 4, and 5. To each of these counts demurrers were overruled, and to each a great number of special pleas of assumption of risk and contributory negligence were interposed and demurrers to each of which were sustained. The record, however, informs us that by consent or agreement the trial was had on the general issue and upon pleas of assumption of risk and of contributory negligence pleaded in short by consent. So if there was any error as to rulings on those special pleas, it was cured or rendered harmless by allowing these two special pleas to be pleaded in short in consent. The record therefore affirmatively shows that these errors, if such they were, were without possible injury, for the reason that any defense was availing under these issues which could have been availing under the special pleas, and that it would require no more nor less proof than would have been required under the special pleas as to which demurrers were sustained.

We do not think that either one of these counts upon which the trial was had was subject to any ground of demurrer interposed thereto.

While count 2 did not allege in terms that the defendant was the owner of the wire or pole which was alleged to be defective, it did allege that the wire and pole were a part of the ways, works, machinery, or plant, etc., of the defendant, and so alleged in the language of the statute.

In such cases it is not necessary to allege or prove that the master owns the defective machinery or appliances forming a part of the ways, works, etc. The master cannot avoid the duty imposed by the statute, or escape liability under the statute, by using the machinery or appliances of other masters.—*Rockhold's Case,* 143 Ala. 115, 42 South. 96; *Cunningham's Case,* 141 Ala. 206, 37 South. 445; *Andrews' Case,* 150 Ala. 368, 43 South. 348. The statute requires only that the instrumentality "be connected with, or used in, the business of the master." The allegations of this count were therefore sufficient, and there was proof which, if believed, supported the averments.

The fifth count is almost an exact copy of counts repeatedly held sufficient by this court. See *Wolf v. Smith,* 149 Ala. 457, 42 South. 824, 9 L. R. A. (N. S.) 338; *Lewis' Case,* 161 Ala. 417, 49 South. 859; *Triplett's Case,* 4 Ala. App. 323, 58 South. 109.

The duties which an electric company owes to its employees, and especially to linemen, are stated to some extent in *Sanges' Case,* 169 Ala. 353, 53 South. 176, Ann, Cas. 1912B, 461. The duty is upon the master to exercise reasonable care to the end that his servants shall have a reasonably safe place in which to work and to discharge their duties to him; and to exercise the same care to see that needed and proper repairs and inspections of his premises are made, so that they may continue safe for the use of his servants.

The master also owes the duty to exercise reasonable care to warn his servants who are without such knowledge of dangerous premises or machinery which they are required to use.—Thompson on Neg. §§ 3763, 3781, 4017; *Hammond's Case,* 156 Ala. 253, 47 South. 248.

There was no reversible error in the rulings as to the evidence in allowing expert proof as to how long it is

necessary for one to become an experienced lineman. The witness qualified as an expert on this subject; and, moreover, the objection came too late—not until the alleged objectionable question was answered.

There was evidence tending to support each count on which the case was tried, and the issues of contributory negligence and assumption of risk were clearly questions for the jury; hence the affirmative charges were properly refused.

As before stated, it was necessary to prove that the instrumentality which injured plaintiff's intestate belonged to, or was the property of, the defendant. It was sufficient to allege and prove that the instrumentality was connected with, or used in, the business of the master. This was so alleged, and there was proof tending to support the allegation.

It cannot be said as matter of law, in this case that the servant assumed the risk. The servant is not held to have assumed the risk of defects in the ways, works, machinery, plant, etc., of the master, of which he had no notice or knowledge and of which he was not chargeable with such notice or knowledge.

He does assume the ordinary risks incident to the employment; but not that of the negligence of the master or of the superintendent, nor other risks, incident to the breach of duty, by the common law or the statute imposed on the master.—*Briggs v. Tenn.,* 163 Ala. 239, 50 South. 1025; *Brantley's Case,* 168 Ala. 579, 53 South. 308; *Moore's Case,* 158 Ala. 368, 48 South. 593; *McGowan's Case,* 149 Ala. 440, 43 South. 378; *Bean's Case,* 163 Ala. 263, 50 South. 1012; 5 Mayf. Dig. 577 et seg.

Charges A, C, G, S, and 13 were each properly refused. Charge A is confused as to the counts to which it refers.

Charge C was also misleading, and was bad in form and in the manner in which it refers to the complaint, in that it begins with this statement: "To counts numbered 3 and 4 separately and severally it pleads, etc."

Charge G was abstract for the reason that, so far as we are able to find, there is no evidence that the intestate was charged with or was under any duty to inspect the pole referred to in the charge, nor that he was guilty of any negligence in the matter of that particular inspection.

Charge E was misleading, and was properly refused because it is indefinite and uncertain as to what defect it has reference to.

Charge 13 was inherently bad, as applied to the evidence in this case. The amount of damages was a question for the jury and not for the court.

There was nothing incorrect or harmful in that part of the oral charge to which exceptions were reserved. The circumstances referred to by the court (the age, habits, etc., of the deceased), as developed in the evidence, could be looked to by the jury in ascertaining the amount of damages; and this is all, in effect, that the court charged in the part of his oral instruction to which the exception was reserved.—*Bennett's Case,* 144 Ala. 186, 39 South. 574, 1 L. R. A. (N. S.) 1150, 113 Am. St. Rep. 32; *Orr's Case,* 91 Ala. 548, 8 South. 360.

This brings us to a consideration of the question to which most of the argument (for both appellant and appellee) is addressed, to wit, whether or not there was reversible error in the action of the court in qualifying the jurors for the trial of this cause. We confess that the practice is new and novel, and should certainly not be resorted to for the purpose of influencing the jurors who were to be selected to try the pending cause. The plaintiff, before the trial was entered upon and appar-

ently for the purpose of ascertaining the qualifications of the jurors to be selected to form the venire for the trial of this cause, filed a motion in writing (omitting the formal parts) as follows:

"Comes the plaintiff and moves the court to qualify the jury as to their being employees, stockholders, or interested in the 'London Guarantee & Accident Company, Limited,' and as grounds for this motion assigns the following: First. That the said defendant has an insurance policy in the London Guarantee & Accident Company, Limited, under the terms of said policy the said London Guarantee & Accident Co., Limited, agrees to pay any judgment that the plaintiff may recover against the defendant to an amount not exceeding $5,-000. Second. That the London Guarantee & Accident Company, Limited, has agreed to pay any judgment that the plaintiff may recover in this suit against the defendant in a sum not exceeding $5,000. Third. That the London Guarantee & Accident Company, Limited, is interested directly in the defendant and in this suit in that, should a judgment be obtained against the defendant for a sum less than $5,000, then in that event the said London Guarantee & Accident Company, Limited, becomes liable to the defendant for said sum so recovered against the defendant; that the London Guarantee & Accident Company, Limited, has employed attorneys to defend this suit. Fifth. That the result of this suit does not affect the defendant should a judgment be recovered for an amount of $5,000 or less; that the London Guarantee & Accident Company has agreed with the defendant to pay said sum. Sixth. That the London Guarantee & Accident Company, Limited, is the party defending this suit, and that a judgment for $5,000 obtained against the defendant is to be paid by the said London Guarantee & Accident Company, Limited."

The defendant objected to the filing of the motion and moved to strike it, and objected to the motion being read in the presence or hearing of the jury, and to the introduction of evidence to prove the allegations of the motion, and excepted to each ruling and action of the court as the proceeding progressed. The trial court, however, before allowing proof of the motion, made the following statement to counsel for defendant, to which counsel replied as indicated:

"It is only for the purpose of qualifying the jury, and if you gentlemen will agree that the jury may be qualified without going into the testimony, it need not be taken." Defendant answered: "We are not going to agree to it at all."

The plaintiff then proved that the insurance company had executed an insurance policy or contract to the defendant, which would cover the loss or injury sued for, to the amount of $5,000. To the action of the court in allowing this proof the defendant excepted. This clearly presents to us the question whether or not such action on the part of the trial court was reversible error.

It cannot be doubted that the law demands that jurors who administer justice in its courts should be free from bias or prejudice. They should be impartial and indifferent to the result of the suit, save as the evidence and the law direct.

A man cannot, under the law, be a judge or a juror in his own case. The master is not a qualified juror or judge in his servant's case, nor the servant in his master's case. Neither is the attorney so qualified as to his client's case. The principal is not a qualified juror in his agent's case if it concerns the agency, nor is the agent so qualified in his principal's case. It has been held that the relation of landlord and tenant dis-

qualifies the parties so related as jurors.—*Brazleton's Case,* 66 Ala. 98; *B. R. L. & P. Co. v. Drennen,* 175 Ala. 338, 57 South. 876. It was said by this court in *Drennen's Case, supra:* "Without committing ourselves to all that Mr. Proffatt (Jury Trial, § 177, p. 231) says, we quote: 'Social or business relations existing between a juror and a party to the suit render the juror incompetent. As when the juror is under the power of either party, or in his employment, or has drunk or eaten at his expense, since the commencement of the action. Hence the relation of landlord or tenant disqualifies.' Mr. Thompson (Trials, vol. 1, § 67, p. 59) says: 'That the venireman is the inferior or dependent in business relations of the opposite party to the suit will generally disqualify. This, if he is his surety, and the rendition of a judgment against him will diminish the probability of his being exonerated, or if he is his tenant, although distress for rent may have been abolished.' "

This court has repeatedly held that the disqualifications of jurors mentioned in the statutes are not the only ones that exist or that will be enforced by the courts of the state, but that there are others which existed at the common law, and which will be observed in passing upon the competency of jurors in both civil and criminal trials.

If the insurance company referred to in the motion and the evidence would be liable as for the judgment to be rendered in the case to the amount of $5,000, then, of course, it had a direct pecuniary interest in the suit; and hence the stockholders, officers, agents, and servants of such company would be thereby disqualified as jurors for the trial of the case, and would be subject to challenge for such cause. If any such persons were on the venire or panels, it was not only proper that the court be informed thereof, but it was also necessary, in

order that the jury might be purged of such disqualified persons.

There is in this state no set or fixed rule by which the court should be so informed of such disqualifications, or by which the court should ascertain the facts of disqualification; but this should be done before the trial is entered upon, otherwise the parties might be held to have waived the ground of challenge or disqualification.

All this, of course, ought to be done, in so far as it can be done, in a mode and at a time that will not prejudice jurors, otherwise qualified, against the rights of either party. Improper conduct or remarks of counsel or of the trial court as to such matters have frequently been held sufficient ground for setting aside a verdict and when on the part of the trial court, sufficient cause to reverse a judgment. The object and purpose of the law in the matter is to purge juries of incompetent and disqualified persons as to that particular trial, and so to prevent bias and prejudice from inducing an improper verdict. Of course, the right to so purge the jury ought not to be denied; but, for equally just reasons, such right ought not to be so exercised or asserted as to prejudice those who are not disqualified, against either party to the suit. The last condition would be as objectionable as the first—indeed, the infirmity would be the same. The jurors would thus be rendered unfit to try that particular case, and be so rendered in an attempt to get rid of disqualified persons. In such case the disease would be no worse than the remedy.

For this reason, trial courts and counsel should always be careful in ascertaining the facts as to such disqualifications and in excusing or in challenging a person as incompetent. Any attempt on the part of counsel to get before the jury the fact that parties other than

the litigants will be injured or benefited by the verdict or judgment to be rendered for the purpose of biasing or prejudicing the jury and not for the purpose of ascertaining the fitness of the jurors for the trial, is highly reprehensible, and should not for a moment be tolerated by trial or appellate courts. Such practices have been repeatedly condemned by this and all other appellate courts.

Quite a number of cases are cited by counsel for appellant to show that the rulings of the court on questions arising out of the motions and the evidence, as to the qualifications of jurors, were reversible error. Among those most strongly urged are the following cases:—*Wesby v. Washington Brick Co.,* 40 Wash. 289, 82 Pac. 271; *Lowsit v. Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431; *Stratton v. C. H. Nichols Lumber Co.,* 39 Wash. 323, 81 Pac. 831, 109 Am. St. Rep. 881; *Eckhart Milling Co. v. Schaefer,* 101 Ill. App. 500; *Lipschutz v. Ross* (Sup.) 84 N. Y. Supp. 632; *Chybowski v. Bucyrus Co.,* 127 Wis. 332, 106 N. W. 833, 7 L. R. A. (N. S. 357; *Howard v. Beldenville Lbr. Co.,* 129 Wis. 98, 108 N. W. 48. In most all of these cases in which a reversal or a new trial was had, it was on account of remarks of counsel during the progress of the trial after the jury had been qualified and selected, and the remarks were evidently made for the purpose of inflaming the jurors so selected, and who were qualified, and not for the purpose of ascertaining if any were disqualified, and, if so, to get rid of them, as it is made to appear in this case.

The only effect the remarks could have had in the cases cited was the improper one above referred to; while in this case the declared purpose of the motion and the evidence was a proper one, to wit, to ascertain if any of the jurors were disqualified on account of their

relation to, or connection with, the insurance company, and to show that the insurance company was directly and financially interested in the verdict. If counsel had a right to make the motion in question—and it seems that they had—and the interest of the insurance company was not admitted, as it could have been and as counsel for defendant declined to do, then of course, the plaintiff had a right, and it was her duty to the court, to show that the material matters set forth in the motion were true. And this being shown, it was not only the right, but it was the duty, of the court to qualify the jurors as to the matters contained in the motion, and presumptively the trial judge instructed the jury that the fact that a surety company had insured the defendant against loss should not influence their verdict. If none of the jurors were disqualified on this account, counsel for the defendant could have avoided the evil effects by admitting the averments of the motion, as to which there seems to have been no dispute, and have consented that the jurors be qualified on this subject. If it were known to the counsel and to the trial court that none of the jurors were disqualified on account of the matters set forth in the motion, it would, of course, be highly improper to parade the fact that the insurance company would be liable. But there is nothing in this record to show that either the trial court or counsel had such knowledge at the time the motion was made and the evidence in support of it was offered. For this reason we cannot reverse, and ought not to reverse, the judgment. Trial courts, however, ought to be very watchful to see that verdicts are not improperly influenced or obtained through methods such as are alleged in the motion and evidence now under discussion.

While the verdict in this case is large, we are not prepared to say that it clearly appears to be so excessive

[Armstrong v. Sellers, et al.]

that we would be justified in setting it aside under the rules in such cases repeatedly laid down by this court.

Affirmed.

DOWDELL, C. J., and ANDERSON and DE GRAFFENRIED, JJ., concur.

