# Camp *v.* Churchill.

*Injury to Servant.*

(Decided April 21, 1914. Rehearing denied June 4, 1914. 65 South. 336.)

1. *Master and Servant; Injury to Servant; Contributory Negligence.*—Where decedent was struck and injured by one of the hooks of a derrick as the hooks were being elevated after the beam which was being moved had been deposited on the dray, and it was decedent's duty to hold the hooks clear of the dray, which if he had done, would have prevented the accident, decedent is guilty of contributory negligence, precluding a recovery by his administrator.

2. *Trial; Jurors; Interest as Insurers.*—Where plaintiff wishes in good faith to test the status of a juror with regard to their interest as insurers against loss for the damage to servants, he should make proper application to the trial judge.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by Lennie Churchill as administratrix of the estate of J. C. Churchill for damages for the death of her intestate while engaged in the service or employment of defendant. Judgment for palintiff and defendant appeals. Reversed and remanded.

The substance of the complaint is that while plaintiff's intestate was engaged in the service of defendant in the moving of heavy pieces of structural steel, defendant's superintendent negligently permitted, caused, or allowed said steel to be moved during said service, thereby negligently imposing it against intestate's leg, so injuring him that as a proximate result thereof he died. The result was a verdict and judgment for plaintiff for $4,000.

The work in question was conducted by defendant's three servants, Scarborough, Adams, and intestate, under the superintendence of defendant's servant Ward. It consisted in the removal of steel beams 15 or 20 feet in length, and weighing from 1,500 to 2,000 pounds each, from a car, and loading them on a flat dray. The lifting was done by an electric hoisting engine and derrick, which being operated by Scarborough. Two chains with hooks were attached to the boom, and three or four beams were moved at a load. Adams and intestate were handling the boom end of the work, and it was their duty to each adjust and hook a chain around the bundle of beams, and when they were deposited on the dray, it was their further duty to unhook the chain, and free them from the beams. When the chains were thus released, a bundle of beams being laid on each side of the wagon with an open space between to permit the withdrawal of the chain, they were dropped down so as to be visible underneath the dray to the engineer standing about 50 feet away. It was then in order for the engineer to remove the boom and chains for another load, and in order to do this it was necessary to lift the boom vertically until the chains and hooks were clear of the dray, and of the steel beams.

On the question of negligence only two witnesses were examined—Scarborough for plaintiff, and Ward for defendant. Scarborough thus describes the accident:

We had loaded some steel on this wagon that morning; we generally always put two lifts on a wagon, one on one side and one on the other, in order to clear the chains, so we could get them out, two different lifts. And we had put on one when he was hurt. That was the last trip he got hurt on. When we raised the second lift or load of structural steel, they untied the chains and crossed the hooks; the hooks came down under the bottom of the dray, so I could see them, and they gave me the signal to go ahead. Mr. Ward gave that signal, and the hooks caught, and I seen them, and then they took the hooks off, and I slacked up a little bit, and they gave me the signal to go ahead the second time; Mr. Ward did that, and Mr. Adams also. I reversed the hoist in obedience to the signal of Mr. Ward. The man that always unhooks it tells me when he is ready. Mr. Ward signaled me to raise the hoist, him and Mr. Adams' both, and then I raised it the second time, and that is when it turned the beams over against Mr. Churchill and hurt him.

On cross-examination the witness said:

At the time that signal was given the chain had been unhooked, and it was loose at that time, and we were simply taking up slack. *Mr. Churchill was up on top holding the chain, and he was supposed to hold them clear; he did not hold them clear; that is the way the accident happened.*

The subsequent examination of this witnes in rebuttal did not contradict these decisive facts as originally stated by him.

The only material conflict between the testimony of Scarborough and Ward was in Ward's denial that he gave the signal for the second lifting of the chain, after they had caught the first time. He stated that when the signal was given the second time by either Adams

or Churchill, Churchill had two chains in his hands, and they were swinging clear of the wagon with the exception of the beams, and that it was the duty of Churchill to hold the chains clear, and that he could have done so. The court refused the general affirmative charge for defendant, a number of special charges requested in writing, and also overruled his motion for new trial.

CHARLES A. CALHOUN, for appellant. Negligence must arise out of a breach of duty, and hence it was incumbent on plaintiff to prove a duty of Ward which was breached by him to plaintiff's injury as a proximate consequence. It is appellant's contention that appellee failed in this respect under the evidence in the court below, and hence he was entitled to the affirmative charges and the court's refusal to give them constituted error.— *Gen. Supp. & Const. Co. v. Shelton,* 157 Ala. 635; *Walton v. Tenn. Co.,* 166 Ala. 539; *Tenn. Co. v. Harmes,* 167 Ala. 250; *Richards v. Sloss Co.,* 146 Ala. 258; *Hammond v. Ala. Cons. C. & I. Co.,* 156 Ala. 253; *Peters v. Southern Ry. Co.,* 135 Ala. 533.

GIBSON & DAVIS, for appellee. The question of negligence was one for the determination of the jury, and was properly submitted to the jury.—*Holmes v. B'ham Southern,* 140 Ala. 215; *T. C. & I. Co. v. Williamson,* 164 Ala. 54; *City of Mobile v. Shaw,* 149 Ala. 549; *Moulton v. L. & N.,* 128 Ala. 539; *Wilson v. L. & N.,* 85 Ala. 269.

SOMERVILLE, J.—On the undisputed evidence there can arise no rational inference that any negligence on the part of defendant's superintendent, Ward, proximately contributed to the injury suffered by plaintiff's intestate. There is nothing to indicate that Ward was

negligent in giving the order to the engineer to lift the chains. The intestate's special duty was to see that the chains swung clear of the wagon and beams, as the hoisting drew them up; he was on the wagon and had hold of the chains solely for that purpose; and they caught on the beams and threw them over only because he failed to hold them clear. If the hooks were caught so that he could not extricate them, he must have discovered this, as it was his business to do, and it was then his duty to see that they were released before they were raised; and, even though the hooks were then in fact caught in some way, Ward had a right to assume from the intestate's attitude that the chains were clear and were ready to be lifted. But the evidence is without dispute that the hooks were not caught, and the rebuttal statement by Scarborough that they must have been caught because he could not see them is a mere guess on his part, and raises no conflict in the evidence on that issue. Scarborough says that the intestate was *up on the dray holding the chains, and he was supposed to hold them clear.* And we are convinced that, as matter of law, Scarborough's conclusion cannot be disputed. He says: "He did not hold them clear. That is how the accident happened." It follows that, whether upon the plea of the general issue, or plea 3 of contributory negligence, defendant was entitled to the general affirmative charge, and the trial court erred in its refusal.

The special charges requested by defendant were properly refused as being abstract, misleading, or mere duplicates of special charges actually given.

We deem it unnecessary to discuss the question of whether the intestate's death from acute pulmonary tuberculosis, nearly a year after he received this injury, can be proximately traced to the injury as its juridical cause.

It is unnecessary, also, to discuss whether there was error or ineradicable prejudice resulting from the statement of the plaintiff's counsel in the presence of the jury that he desired to qualify them with respect to their relationship to any insurance company that might be indemnifying the defendant against the payment of damages in the pending cause.

If a plaintiff wishes in good faith to test the status of jurors in this regard, he may do so in a proper way under the direction of the trial judge, as pointed out in *Citizens' etc., Power Co. v. Lee,* 182 Ala. 561, 62 South. 199, where the subject is discussed at some length.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.

