The defendant was indicted for receiving stolen property in the second degree. Alabama Code Section 13A-8-18 (1975). A jury convicted him of receiving stolen property in the third degree. Section 13A-8-19. Sentence was one year imprisonment.
 I
The failure of the State to produce the information sought by the defendant's motion to produce did not warrant the granting of a motion to dismiss.
Before trial, the defendant filed a motion to produce seeking especially, and among other things, the stolen frozen meat, the box in which it had been contained, the automobile involved, the trunk key and a key ring. The trial judge granted this motion which was unopposed by the district attorney.
All this evidence had been in the possession of the police department. In helping defense counsel obtain these items, the assistant district attorney learned that all the evidence had "either been returned, destroyed, or misplaced."
Despite the fact that the State is not charged with the deliberate suppression of any evidence, due process forbids the prosecution in a criminal case to suppress "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland,373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963).
The general rules have been stated as follows:
 "In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that `the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.' 373 U.S. at 87, 83 S.Ct. at 1196-97. As this court has previously *Page 148 
noted, `Brady requires the disclosure of material evidence favorable in the sense of mitigation or exculpation, and also requires the prosecution to disclose evidence important and useful for impeachment purposes.' Calley v. Callaway, 519 F.2d 184, 221 (5th Cir. 1975) (en banc), cert. denied, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976).
 "In determining whether the nondisclosure of evidence rises to the level of an unconstitutional denial of due process, a strict standard of materiality is applied in the Fifth Circuit. United States v. Crockett, 534 F.2d 589, 601 (5th Cir. 1976). Retrial is appropriate only if the withheld evidence requested `creates a reasonable doubt that did not otherwise exist as to the guilt of the accused.' United States v. Beasley, 576 F.2d 626, 630 (5th Cir. 1978), cert. denied, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), quoting United States v. Agurs, 427 U.S. 97, 113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (`If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.')." United States v. Gaston, 608 F.2d 607, 612
(5th Cir. 1979).
See McCorvey v. State, 339 So.2d 1053, 1056 (Ala.Cr.App.), cert. denied, 339 So.2d 1058 (Ala. 1976); Edwards v. State,51 Ala. App. 433, 286 So.2d 308, cert. denied, 291 Ala. 777,286 So.2d 313 (1973).
Defense counsel apparently wanted to use the requested items of physical evidence to show that there was no probable cause to arrest the defendant and that this evidence was obtained through an illegal search and seizure. As defense counsel noted, all these items were "fungible". There was nothing unique about any item. These items did not, in and of themselves, incriminate the defendant. In fact, the testimony of the arresting officer, Sergeant James Mayo, was the only evidence that linked the defendant to the crime. Sergeant Mayo gave a detailed description of the meat and the box in which it was contained. Whether he actually saw the meat in the box before arresting the defendant as he testified cannot be proved or disproved by the physical presence of the box.
The physical items sought were ordinary and familiar items capable of being described fairly and accurately so that both judge and jury would have a clear mental picture of each item. In view of the facts that these items did not incriminate the defendant and were susceptible to clear verbal descriptions, we are confident that their physical production at the defendant's trial would not create any reasonable doubt of his guilt and thereby justify a new trial. Although the requested items were material and might have been helpful to both the prosecution and defense in the presentation of their cases to the jury, the evidence was not favorable to the defendant "in the sense of mitigation or exculpation."
 II
The record shows that six of the veniremen were "members or work employees" of the Mobile County School Board. The indictment charged that the stolen meat was the property of the Mobile County School Board. All the prospective jurors stated that their "relationship and employment would not affect their thinking . . . or their ability to give the State and the defendant a fair and impartial trial."
Welch v. City of Birmingham, 389 So.2d 521 (Ala.Cr.App. 1980), held that "employment of a juror by a party to litigation is in and of itself generally calculated to affect adversely the desirable balance one should have as a juror and for that reason a juror employed by a municipality is subject to challenges for cause in a case in which the municipality is a party." 389 So.2d at 523. However, a state employee is not subject to a challenge for cause in a case involving a violation of the criminal laws of the state. Welch, supra.
"An employee is incompetent to serve as a juror in a cause involving the interest of the employer and is, therefore, subject to challenge for cause." Kendrick v. BirminghamSouthern R. Co., 254 Ala. 313, 322, 48 So.2d 320 (1950);Citizens' Light, Heat *Page 149 Power Co. v. Lee, 182 Ala. 561, 577-78, 62 So. 199 (1913).
Here, the School Board was not a "party" to the criminal prosecution. The Board was the "victim". Employment of a prospective juror by the same company that employed the victim does not automatically disqualify the juror for cause. Carltonv. State, 415 So.2d 1241 (Ala.Cr.App. 1982). The fact that a prospective juror was employed by the district attorney's office did not alone impute bias as a matter of law. Lowe v.State, 384 So.2d 1164 (Ala.Cr.App.), cert. denied, Ex parteLowe, 384 So.2d 1171 (Ala. 1980). The fact that a venireman is an employee of the circuit clerk's office does not constitute ground for a challenge for cause. Collins v. State,385 So.2d 993 (Ala.Cr.App.), reversed on other grounds, Ex parte Collins,385 So.2d 1005 (Ala. 1979). In a prosecution for first-degree murder while serving a life sentence, which involved a killing after the defendant had escaped from prison, the trial court properly disallowed a challenge for cause to a prospective juror who was a retired prison employee. Thigpen v. State,355 So.2d 392, 398 (Ala.Cr.App.), affirmed, 355 So.2d 400 (Ala. 1977). See also Glenn v. State, 395 So.2d 102, 107
(Ala.Cr.App.), cert. denied, Ex parte Glenn, 395 So.2d 110
(Ala. 1980) (In prosecution for assault with intent to murder power company employee, trial judge did not abuse his discretion in overruling defendant's challenge for cause of juror who was also employed by the power company, in that such employment, when juror did not know assaulted party, did not prima facie indicate interest or bias on the part of the juror).
To justify a challenge of a juror for cause there must be a statutory ground (Ala. Code Section 12-16-150 (1975)), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court. Wyatt v. State,36 Ala. App. 125, 139, 57 So.2d 350, cert. denied, 257 Ala. 90,57 So.2d 366 (1952).
We find that the fact that a prospective juror was employed by a county school board does not constitute a challenge for cause in the prosecution of an accused for receiving stolen meat which was the property of the school board and which was stolen from a county elementary school. Beasley v. State,337 So.2d 80 (Ala.Cr.App. 1976) (The fact that a prospective juror, in an armed robbery prosecution, was a professor at the college attended by the victim who was also a witness for the prosecution did not constitute ground to challenge that juror's qualification); Johnson v. State, 36 Ala. App. 203-204,54 So.2d 84 (1951) (In the prosecution for larceny of a bull, certain jurors were not disqualified because they were members of the Cattlemen's Association). Compare Calhoun County v. Watson,152 Ala. 554, 560, 44 So. 702 (1907), holding that it was withinthe discretion of the trial court to excuse for cause jurors in the service or employment of the court of county commissioners in an action by the clerk for ex officio services against the county.
The fact that one prospective juror's father, mother, brother and uncle were employees of the Mobile Police Department did not constitute ground for challenge for cause. The prospective juror was not related to either the defendant, the prosecutor or the victim. Section 12-16-150 (4). See Beddow v. State,39 Ala. App. 29, 32, 96 So.2d 175, cert. denied, 266 Ala. 694,96 So.2d 178 (1957) (A municipal police officer charged with assault with intent to rob could not challenge for cause two members of the venire because they were policemen). In a criminal prosecution by the State, a city police officer is not, ipso facto, disqualified to serve on the jury. Parsons v.State, 32 Ala. App. 266, 269, 25 So.2d 44 (1946) (Prospective jurors who were deputy sheriffs and city firemen not disqualified for cause); Brackin v. State, 31 Ala. App. 228,231, 14 So.2d 383 (1943). "Because a prospective juror is engaged in a particular business or occupation in no way imports absolute bias on his part, and falls far short of reasonably creating any disqualification." Finley v. State,36 Ala. App. 57, 52 So.2d 167 (1951). This challenge did not involve relationship by blood or marriage with a prosecutor, defendant or victim. Section 12-16-150 (4). *Page 150 
That this same juror was the third cousin of Sergeant Mayo, the arresting officer and main witness for the prosecution, did not constitute a statutory ground of challenge for cause. Where statutory grounds for juror qualification are not involved, the trial judge is given much discretion in attempting to insure an unbiased jury. Barbee v. State, 395 So.2d 1128, 1130-31
(Ala.Cr.App. 1981).
 III
The defendant's arguments that he was arrested without probable cause and subjected to an illegal search and seizure are without factual and legal merit.
Between one and two o'clock on the morning of November 9, 1981, Sergeant Mayo, patrolling in an unmarked car, observed four males standing at the rear of a Chevrolet automobile with the trunk raised. The car was parked in the parking lot of the Flame Social Club and near the building. Mayo observed that none of the tires on the car were flat. He saw the defendant holding a "commercial type box" labeled "Pleasing Foods Company". The box was open and inside the box he could see frozen meat — "institutional type products. Something you just can't buy in a grocery store." Standing next to the defendant was a man with money ("four or five bills") in his left hand and his right hand was in the box.
When Sergeant Mayo "actuated the bright lights" the defendant turned and saw him, spoke to the others, and "everybody took off", leaving the trunk open.
Seeing some boxes in the trunk, Sergeant Mayo "slammed the trunk lid and took off" after the defendant. One of the men "ran to the rear of the club at a dead run — he just took off." Two of the four men "moved hastily" into the Flame Club and the defendant "moved hastily" ("Didn't run, but he didn't walk") around the other side of the building with a box of meat. As Mayo "turned the corner around the other side of the club", the defendant "was just standing back up from putting that box under a parked car."
Sergeant Mayo brought the defendant back to the Chevrolet and "checked the car for keys." Noticing that "there was an ignition key and no trunk key", he took the keys out of the ignition and placed them in his pocket. He "patted down" the defendant for any weapons and felt a key in the defendant's right front pocket. Because it was a key, he "just let him keep it."
When other officers arrived, Officer Perez "shook down" the defendant "to make sure that he didn't have any hidden weapon" and Mayo told Perez to check the key in his right front pants pocket and give it to him if it was a General Motors key. Later Perez gave the key to Mayo.
Sergeant Mayo discovered that the car did not belong to the defendant and placed him in custody. He then "opened the trunk of the automobile, after he told me it was not his car" and discovered two fifty-five pound boxes of frozen meat and "a couple other boxes of frozen products."
Upon observing the "suspicious" and "odd" conduct of the defendant and other men, Sergeant Mayo was justified in pursuing and stopping the fleeing defendant. "Based upon the whole picture", Mayo had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411,101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). "(W)hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person — and for action on that suspicion." Cortez, supra. Officer Mayo's conduct in this case constitutes reasonable and appropriate law enforcement and good police work. To require more would be to demand that a police officer have actual knowledge that a suspect committed a crime before taking investigative action. Spradley v. State, 414 So.2d 170
(Ala.Cr.App. 1982); Butler v. State, 380 So.2d 381 (Ala.Cr.App. 1980); Luker v. State, 358 So.2d 504 (Ala.Cr.App. 1978). *Page 151 
Once the defendant walked away from the open trunk he abandoned any expectation of privacy he had therein and has no standing to challenge any alleged search and seizure. Collierv. State, 413 So.2d 396 (Ala.Cr.App. 1981), affirmed, Ex parteCollier, 413 So.2d 403 (Ala. 1982). Moreover, once the officer apprehended the defendant in the act of attempting to hide the box of meat, suspicion ripened into probable cause to believe that a crime had in fact been committed and that the defendant was the guilty party. These facts justified the seizure of the key from the defendant and the opening of the trunk.
 IV
Sergeant Mayo was improperly allowed, in violation of the rule against the admission of evidence based on hearsay, to testify to the ownership and value of the stolen property. However, it does not constitute reversible error because it was merely cumulative of other proper evidence or improper evidence admitted without objection.
Without objection, Sergeant Mayo testified that Mr. Thornton identified the meat as School Board property.
Charles Thornton, security officer for the Mobile County School Board, testified that there was a burglary at Crichton Elementary School and that he checked the meat and identified it as the property of the School Board. He testified without objection that "to his knowledge" the meat was worth "about $700 or $800."
Moreover, since the defendant was found guilty of receiving stolen property in the third degree, involving property which does not exceed $100 in value, the error in allowing Sergeant Mayo to testify to value was harmless. A.R.A.P. Rule 45.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.