[Springfield v. The State.]

# Springfield *v.* The State.

*Indictment for Murder.*

1. *Statement in argument of counsel; explanation by court.*—Where the counsel for the defendant in a criminal case stated to the jury that they were "above this court and the Supreme Court in their right to decide this case," it was proper for the court, in its general charge to the jury, to explain that they were the judges of the facts, but not of the law.

2. *Self-defense; charge as to.*—On a trial for murder, it is not error for the court to state to the jury, in reference to the law of self-defense, that "no balm or protection is provided for wounded pride or honor in declining combat, or sense of shame in being denounced as cowardly."

3. *Drunkenness does not enlarge the right of self-defense.*—One who voluntarily put himself under the influence of liquor, and in consequence acted upon an exaggerated or unjustifiable belief as to the necessity of taking the life of another in defense of his own, cannot avail himself of such belief as a defense to the charge of murder.

4. *Duty to retreat; burden of proof.*—On a trial for murder, where the uncontradicted evidence shows that the defendant intentionally killed the deceased with a deadly weapon, the burden is then cast upon the defendant to show a pressing necessity, actual or reasonably apparent, to take the life of the deceased in self-defense, and that he could not have safely retreated without apparently increasing his peril

5. *Evidence of good character; charge as to.*—In a criminal case, proof of the good character of the accused is admissible to generate a doubt, but such proof must be considered by the jury in connection with all the other evidence in the case; and a charge instructing the jury in a murder case that the defendant's good character alone, if proved to their satisfaction, might "raise a reasonable doubt of the killing of the deceased being done with a criminal intent," is properly refused.

6. *Self-defense; charge as to.*—On a trial for homicide, a charge requested by the defendant, which assumes as a matter of law that the mere drawing of a knife by the deceased, in a hostile manner, made it necessary for the defendant to kill him in self-defense, is properly refused.

7. *Same.*—On a trial for murder, instructions requested by the defendant as to the law of self-defense may be refused, where the evidence most favorable to the defendant, as to the circumstances of the killing, shows that he had the choice of murdering the deceased or turning loose a "wild and skittish mule," and that he elected to take the life of the deceased, and hold on to his mule.

8. *Charge as to contradictory statements by a witness.*—It is altogether with the jury what weight they will give to the testimony of a witness who is shown to have made contradictory statements as to material facts, and a charge instructing the jury that proof of such contradictory statements made by a witness is sufficient to create a reasonable doubt as to the evidence of such witness, is properly refused.

9. *Charges which are abstract, or invade the province of the jury,* are properly refused.

[Springfield v. The State.]

Appeal from the Circuit Court of Walker.

Tried before the Hon. James B. Head.

The appellant, Jim Springfield, was indicted for the murder of James Wilder, by shooting him with a pistol.

The testimony for the State tended to show that the deceased, Wilder, on the day of the killing had been to Jasper, in Walker county, as a witness for his brother-in-law in a criminal case against him for selling whiskey without a license, that the defendant, Springfield, and one Jones attended court that day, having been summoned as witnesses for the State in the case against Wilder's brother-in-law, but Springfield was not examined as a witness; that said Jones started home in Wilder's wagon with said Wilder, his said brother-in-law and two other men; but after he had ridden several miles with them, he got out of the wagon, and got on the defendant's mule behind the defendant, who was going home, and overtook Wilder's wagon; that after riding some distance on the mule with the defendant, said Jones alighted from the mule, and resumed his seat in Wilder's wagon; that he soon got into a quarrel with Wilder's brother-in-law, who knocked him out of the wagon, between the wheels thereof; that just about the time Jones struck the ground, the defendant rode up and shot Wilder in the breast, instantly killing him. The testimony for the defendant tended to show that after Jones was knocked out of the wagon and while he was lying on the ground between the wheels of the wagon, which was standing still, the defendant alighted from his mule, which was "young, wild and skittish," and running his left arm through the reins of the bridle, was in the act of stooping down over the body of Jones and attempting to lift him from the ground, when he happened to look up, and saw Wilder leaning over the body of the wagon, holding a knife in his hand, about to stab the defendant in the back; that the defendant threw up his left arm and tried to ward off the blow, but the knife penetrated his left shoulder about one-half an inch; that Wilder immediately drew back his hand to strike another blow, when the defendant drew a pistol and fired upon Wilder before he had time to strike a second blow. The defendant exhibited to the jury a scar on his left shoulder, and also a coat and shirt showing holes cut through them. On the cross-examination of the defendant, as a witness, "the solicitor asked him why he did not turn the mule loose, and get out of the way of the knife," to which he replied "that he was afraid the mule would get away from him." There was evidence tending to prove the

[Springfield v. The State.]

defendant's good character as a quiet, peaceable, and law-abiding man. There was evidence tending to show that the defendant "had been drinking liquor in Jasper, and on the road that evening."

The court, on the demand of the defendant, gave its general charge in writing, and the defendant separately excepted to the following portions of said written charge: "(1.) One remark of counsel in addressing you, gentlemen, might mislead you. It was something to the effect that you are above this court and the Supreme Court in your right to decide this case. The statement, gentlemen, is only partially correct. So far as determining what the facts are, what the evidence shows, it is true; for you are the sole judges of the facts, and in judging them you are above and beyond every other tribunal, personage or agency; but so far as determining what the law is which is to be applied to the facts, and by such application a true verdict to be reached, the statement of the counsel is not correct." "(2.) In the system [of self-defense] so established no balm or protection is provided for wounded pride or honor in declining combat, or sense of shame in being denounced as cowardly. Such thoughts are trash, as compared with the inestimable right to live." "(3.) If the defendant did not exercise prudence, by reason of indulgence in strong drink, or for other cause, and therefore formed an unjustifiable belief that it was necessary for him to shoot in his defense, he can not avail himself of such a belief." "(4.) The defendant, in his testimony, mentioned, as obstacle to escape, the wagon wheel, the body of Jones on the ground, and that he was holding his mule by the reins. Do these circumstances, or any other circumstances disclosed in evidence, considered with them, show sufficient reason why defendant did not get out of the way of threatened danger? When asked by the solicitor why he did not turn loose the mule, and get out of the way, he replied that he was afraid that his mule would get away. I need not charge you, gentlemen, that if it became a matter of choice between letting go the mule and destroying a human life, the law would declare that the mule should go, and the life be saved." The defendant then requested the following charges in writing, and separately excepted to the court's refusal to give each of them: "(4.) The jury are charged that if the evidence satisfies them of the good character of the defendant, this good character of the defendant may raise a reasonable doubt of the killing of the deceased being done with a criminal intent." "(13.) If the jury find from the evidence that the defendant, with no in-

[Springfield v. The State.]

tention of bringing on a difficulty, approached the deceased in a peaceable manner, and the deceased made the first hostile demonstration by drawing a knife, and that the defendant was in such proximity to the deceased as to render it hazardous to attempt flight, then the jury should acquit the defendant." "(14.) If the jury find from the evidence that the defendant, with no intention of bringing on a difficulty, approached or went near to deceased, in a peaceable manner, and that the deceased assaulted him with a deadly weapon, or a knife calculated to produce death, and the assault was open and direct, and in perilous proximity, then the law would not require the defendant to endanger his safety by attempted flight, and the jury must acquit the defendant." "(15.) If the jury believe from the evidence that the defendant, with no intention of bringing on a difficulty, approached or went near to the deceased, in a peaceable manner, and deceased made the first hostile demonstration by drawing a weapon, and if the defendant was in such proximity to deceased as to render it hazardous to attempt flight, or if the assault was with a deadly weapon, and was open and direct, and in perilous proximity, then the law would not require the defendant to endanger his safety by attempted flight, and the jury should acquit the defendant." "(18.) Proof of contradictory statements made by a witness as to material facts is sufficient to create or raise a reasonable doubt as to the evidence of such witness, and goes to his credibility."

WM. L. MARTIN, Attorney-General, for the State.

THORINGTON, J.—Appellant was tried under an indictment charging him with murder. The plea was self-defense, and he was found guilty of murder in the second degree. The only questions reserved on the trial for consideration by this court are exceptions to portions of the general charge given by the court to the jury, and the refusal of the court to give several special charges requested by appellant.

The general charge, on demand of appellant, was given by the court in writing. We have examined it carefully as a whole and find it to be a fair, clear and correct statement of the law, and to cover fully every phase of the case made by the testimony. The first exception is to that portion of the charge which is in the following words: "One remark of counsel, in addressing you, gentlemen, might mislead you. It was something to the effect that you are above this court

[Springfield v. The State.]

and the Supreme Court in your right to decide this case. The statement, gentlemen, is only partially correct. So far as determining what the facts are, what the evidence shows, it is true; for you are the sole judges of the facts, and in judging them you are above and beyond every other tribunal, personage or agency; but so far as determining what the law is which is to be applied to the facts, and by such application a true verdict to be reached, the statement of the counsel is not correct."

The bill of exceptions recites that "one of defendant's counsel stated to the jury that they, the jury, were above the court and the Supreme Court in their right to decide this case." This remark should not have been made by counsel without accompanying it with such an explanation as the court gave, and it clearly imposed upon the court the duty to see that the jury was not misled or improperly influenced by it. The mode adopted by the court of explaining and limiting it was proper, and the distinction drawn by the court between the province of the jury and that of the court is in accord with the law of this State, and amply supported by authority.—*Marcus v. State*, 89 Ala. 23 ; *Harrison v. State*, 78 Ala. 5.

The second exception is to that part of the charge in which the court, after laying down the law of self-defense, uses the following language : "In the system [of self-defense] so established, no balm or protection is provided for wounded pride or honor in declining combat, or sense of shame in being denounced as cowardly. Such thoughts are trash as compared with the inestimable right to live." This is but the statement of a universally recognized doctrine of the criminal law, and has, in substance, frequently been declared in the decisions of this court.—3 Brick. Dig., p. 219, § § 570 *et seq*.

The portion of the charge to which appellant's third exception is directed asserts a correct principle of law, and is directly applicable to the testimony in the case. There was evidence tending to show that appellant had been drinking shortly before the killing occurred and was under the influence of liquor at the time, but not sufficiently so as to incapacitate him for knowing what he was doing. In a preceding portion of the general charge the court had correctly instructed the jury as to the law of self-defense, and that portion of the charge to which this exception is addressed instructed the jury, in effect, that if the defendant by voluntarily putting himself under the influence of liquor incapacitated himself for taking such a view of the situation

[Springfield v. The State.]

as a reasonably prudent man would have taken, under the circumstances, and, in consequence thereof, he acted upon an exagerated or unjustifiable belief as to the necessity for taking the life of the deceased in defense of his own, such belief could not avail him as a defense to the charge in the indictment. This is unquestionably the enunciation of a sound principle of law. Justification for taking human life is not to be found in the excited or tortured imaginings of men whose passions are inflamed by what is generally re-cognized as itself often a potent incentive to crime. If such excuses could avail in the courts, human life would be cheapened, crime encouraged, and the safe-guards provided by law for security to life and property would be seriously impaired. Drunkenness on the part of the accused at the time of committing the homicide may have the effect of re-ducing the offense from murder to manslaughter, if shown to have been so excessive as to render him incapable of form-ing the design to take life ; but there is no principle of law which authorizes drunkenness to be invoked as an excuse for crime, or as a ground for enlarging the right of self-de-fense.—*King v. State*, 90 Ala. 612; *Cleveland v. State*, 86 Ala. 1; *Williams v. State*, 81 Ala. 1; *Fonville v. State*, 91 Ala. 39.

The fourth exception to the general charge covers that part thereof which announces the law of retreat as applica-ble to the facts of the case. The intentional killing of the deceased by the defendant with a deadly weapon was shown by the uncontradicted testimony of the State, and the bur-den was thereupon cast on the defendant not only to show a pressing necessity, actual or reasonably apparent, to take the life of deceased in self-defense, but the *onus* was further on him to show that he could not have safely retreated without apparently increasing his peril. The inability to retreat safely being one of the elements of fact which enters into and creates the necessity to kill, the defendant must prove it, unless it arises out of the evidence produced to prove the homicide ; and the fact that retreat would not place him in less peril, or on better vantage ground than before, has been held in some cases not to excuse him from the performance of that duty. But this last principle is not to be extended beyond the particular cases in which it is ap-plied, and cases based on analogous facts.—*Stitt v. State*, 91 Ala. 10 ; *Davis v. State*, 92 Ala. 20 ; *Gibson v. State*, 89 Ala. 121 ; *Carter v. State*, 82 Ala. 13 ; *Wills v. State*, 73 Ala. 362 ; *Ingram v. State*, 67 Ala. 67. The portion of the charge challenged by this exception is fully as favorable to the defendant as it should have been, and probably more

[Springfield v. The State.]

so than it might have been under the proof and the law above declared as applicable to the facts of this case.

The special charge numbered four requested by the defendant instructs the jury that his good character, alone, if proved to the satisfaction of the jury, might raise a reasonable doubt that the killing was done by defendant with a criminal intent. This was tantamount to an instruction that the good character of the defendant would alone justify his acquittal, and is, therefore, clearly erroneous as a proposition of law. The correct doctrine is that proof of the good character of the accused is admissible in all criminal cases, not only where doubt exists on the other proof, but also to generate a doubt; but such proof must be considered by the jury in connection with all the other testimony and not independently thereof, and the guilt or innocence of the defendant determined from all the testimony.—*Pate v. State*, 94 Ala. 14; *Johnson v. State*, 94 Ala. 35; *Williams v. State*, 52 Ala. 412.

Charge numbered thirteen, requested by the defendant and refused by the court, ignores entirely the inquiry whether deceased made any hostile demonstration toward defendant *after drawing his knife*, and assumes as a matter of law that the mere drawing of a knife by the deceased, in a hostile manner, created an impending, imperious necessity for the defendant slaying him in self-defense. It is not enough that the deceased had at hand the means for effecting a deadly purpose with respect to the defendant, but it must also appear by some act or demonstration of the former that he intended, at the time of the killing, to carry out his purpose, or the circumstances must be such as to create a reasonable belief in the mind of the slayer that it was necessary to deprive his assailant of his life to save his own, or his body from grievous harm.—*Rogers v. State*, 67 Ala. 170; *Lewis v. State*, 51 Ala. 1. Taking the charge as a whole, the jury might have found every fact hypothesized in it without finding that there existed any necessity, actual or apparent, for defendant to take the life of the deceased at the time he fired the fatal shot. The charge is obviously copied from section 579 of 3 Brick. Dig. p. 221, but overlooks the qualifying reference therein to the next preceding section relating to the element of impending peril, actual or apparent. It is also erroneous because it assumes as matter of law that the mere hostile drawing of a knife by the deceased made it necessary for defendant to kill him in self-defense, instead of leaving that question to the jury.

Charge number fourteen assumes as matter of law that on

the facts therein postulated the defendant could not have retreated without endangering his life. It was an inquiry for the jury to determine on all the proof whether the defendant could have retreated without endangering his safety, or increasing his peril, and not a matter to be decided by the court. It may further be said of this charge that it assumes the defendant was assaulted by deceased with a deadly weapon, or a knife calculated to produce death, whereas the testimony, so far as the bill of exceptions discloses, fails to show that the knife was a deadly weapon, or to show any description whatever of the knife.

Charge number 15 is the substantial embodiment of the two charges numbered, respectively, thirteen and fourteen, and is, therefore, subject to the infirmities above pointed out to each of these charges.

As a further objection to all three of the charges it may be added that they are each and all framed in entire disregard of the inquiry as to the degree of force it may have been necessary for defendant to employ in order to repel the threatened danger he claims to have been in at the time of slaying the deceased. Self-defense, it has been said, is simply the resistance of force or seriously threatened force, actually impending (or reasonably apparent) by force sufficient to repel the actual (or apparent) danger and no more. If it goes beyond this, there is guilt which is not excusable or justifiable.—*Lewis v. State*, 51 Ala. 11; *Hughey v. State*, 47 Ala. 97. As pertinent to all three of the charges, it may be said that, in order to justify the homicide, the defendant must have been free from fault himself in provoking or bringing on the difficulty, and must not have entered into it willingly, and there must have existed at the time of the killing an imperious necessity to kill his alleged assailant, or such an appearance of such imperious, impending necessity as to impress the mind of a reasonably prudent man that such necessity did exist; and he should have used only such force as was necessary to repel the actual, or reasonably apparent, danger, and no more, and the circumstances and surroundings must have been such that he could not have retreated or declined the combat without increasing the danger to which he was then in fact or apparently subjected.

After carefully weighing the testimony in this case, and allowing it the utmost probative force, we have no hesitancy in saying that it falls far short of meeting the conditions necessary to make out a case of self-defense according to the rules and authorities referred to herein.

[Christian v. The State.]

On the contrary, taking into consideration the position of the deceased in the wagon, and defendant's position when he fired, whether on his mule, as the State's witnesses testify, or on the ground, as defendant himself states, and accepting the defendant's own testimony as to his means and opportunity for avoiding, without danger to himself, the necessity of slaying the deceased, we are unable to reach any other conclusion but that the question was simply narrowed down to the choice, on defendant's part, of murdering the deceased or turning loose a "wild and skittish mule," and that the defendant elected to take the life of Wilder and hold on to his mule. He must now abide by the consequences the law attaches to his rash and wicked act.—*Squire v. State,* 87 Ala. 114.

All the exceptions, shown by the record, predicated on the law of self-defense might have been overruled, on his own testimony.

Charge numbered eighteen is abstract. The bill of exceptions fails to disclose any testimony to which it can be referred. It is also erroneous because it invades the province of the jury. It is altogether with the jury what weight they will give to the testimony of a witness who is shown to have made contradictory statements.

We have carefully considered all the rulings of the court to which exceptions were reserved, as well as the entire record, and find no reversible error. The judgment and sentence of the Circuit Court are accordingly affirmed.

Affirmed.