(92 South. 515)

## BOYETT v. STATE.  (4 Div. 666.)

(Court of Appeals of Alabama.  Feb. 15, 1921. Rehearing Denied Jan. 17, 1922.) ˙

1. Criminal law ⏊404(3)—Admission of empty shells in evidence not error.

In a prosecution for murder, in which it was undisputed the deceased came to his death by a gunshot wound, where a witness identified an empty shell taken by him from the gun of the deceased and two empty shells which the witness himself had fired from the gun of the accused, admitting the empty shells in evidence was not error.

2. Criminal law ⏊696(5)—Refusal to exclude testimony of witness not objected to at time questions were put held not error.

In a prosecution for murder, where a state's witness testified without objection that he was present on an occasion when the accused and the deceased had a fuss, and that the accused had a knife, a refusal on motion of the accused to exclude all the testimony of the witness was proper, since objection should have been made to the question when it was asked.

3. Criminal law ⏊1044—In absence of motion to exclude improper argument by prosecuting officer, no question is presented for review.

In a criminal prosecution, where no motion was made to exclude objectionable argument of the solicitor, the question of an improper argument cannot be considered on appeal.

Appeal from Circuit Court, Covington County; A. B. Foster, Judge.

Bud Boyett was convicted of manslaughter, and he appeals. Affirmed.

A. Whaley, of Andalusia, for appellant.

The court erred in the admission of the empty shells. 109 Ala. 11, 19 South. 535. The argument of the solicitor was improper and highly prejudicial. 112 Ala. 1, 21 South. 214; 101 Ala. 382, 13 South. 504; 77 Ala. 18;·. 122 Ala. 26, 26 South. 162.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The empty shells were properly admitted. 202 Ala. 24, 79 South. 362; 17 Ala. App. 490, 86 South. 131; 85 South. 819; 112 Ala. 1, 21 South. 214. There was no error in the admission of the other evidence. 197 Ala. 193, 72 South. 316; 183 Ala. 1, 62 South. 780; 12 Ala. App. 97, 68 South. 543. No error was committed, so far as the argument was concerned. 148 Ala. 108, 41 South. 873.

BRICKEN, P. J. This defendant, a white boy who had just passed his sixteenth birthday, was indicted for murder in the first degree; he was tried and convicted for the offense of ˙manslaughter in the first degree, and appeals. ˙

No exceptions were reserved to the oral charge of the court, and the court gave at the instance of the defendant all of the special written charges requested.

[1] The only exceptions reserved to the rulings of the court relate to the testimony. After witness, W. R. Scarbrough, had identified the empty shell which he had taken from the gun of the deceased, and the two empty shells which witness himself had fired from the gun of defendant. The solicitor offered these empty shells in evidence, de-·fendant objected the court overruled the objection, and defendant excepted. In this ruling there was no error. Crawford v. State, 112 Ala. 1, 21 South. 214; Hardley v. State,. 202 Ala. 24, 79 South. 362; Lundy v. State

(Ala. App.) 85 South. 819;[1] James v. State (Ala. App.) 86 South. 131.[2]  It was undisputed that deceased came to his death by a gun-shot wound, and we are unable to see how this testimony could in any manner prejudice the substantial rights of the defendant. Hodge v. State, 97 Ala. 37, 12 South. 164, 38 Am. St. Rep. 145.

[2] The next exception was to the action of the court in overruling defendant's motion to exclude the testimony of state witness Preston Merritt, who had been allowed to testify, without objection, that "he was at a tobacco barn last year, when defendant and deceased had a fuss, and that defendant had a knife." There was no error in this ruling, the rule is that objections to evidence should be addressed to the question, as the objecting party is not allowed to speculate upon the answer of witness. While the bill of exceptions does not contain the questions propounded to this witness, it must be presumed that they were so propounded, and the witness allowed to answer without objection, as error will not be presumed, and the duty rests upon appellant to affirmatively show error. The objection therefore came too late, and the court's ruling was free from error.

What has been said in connection with the court's ruling upon the motion to exclude the testimony of witness Preston Merritt applies also to the motion to exclude the testimony of witness W. J. Hathorne, for even if this testimony had been objectionable, the objection interposed came too late, and the court committed no error in overruling same.

[3] The last and only other insistence made in behalf of appellant is that the argument of the solicitor was not only improper, but was highly prejudicial. This question is not presented for review, as no motion was made to exclude the objectionable argument, and 'the court ruled with the defendant by sustaining the defendant's two objections to this argument. The only rulings of the court in this connection which were invoked being favorable to the defendant, there is nothing presented of which the defendant can complain.

We have dealt with every question presented in the line and scope of our duty and authority which is revisory only, and we find no error in any of the rulings of the court complained of, and, as the record also is free from error, we are without authority to do other than order an affirmance of the judgment of conviction appealed from.

This court, however, is unanimous in the opinion that this case presents a matter for executive clemency. A careful consideration of all the evidence as shown by the bill of exceptions discloses that the evidence against this young defendant was very weak and inconclusive, and was barely sufficient to sustain the burden resting upon the state.

In our opinion the probabilities of innocence of the defendant are numerous and well established, and the presumption of innocence which attended this defendant, being a presumption of law evidentiary in its nature, makes his conviction one of very doubtful propriety. The affirmative charge was not requested, and no motion was made for a new trial. The defendant insisted that the death of deceased was caused by the accidental discharge of the dead man's own gun, and in this contention there are several circumstances which strongly corroborate him. He testified that he and deceased were upon the most friendly terms, and were out hunting together. That they were hunting together is shown without conflict. That they were on friendly terms is evident as disclosed by the record; and the further fact that the families of the defendant and deceased previous to the unfortunate occurrence and since that time were also upon the friendliest of terms, and even up to the date of the trial of this defendant visited each other and intermingled in friendly intercourse. The defendant's recital of the unfortunate affair is, in substance, that he and the deceased, a young man about 18 or 19 years old, were down in a field near a spring, and that each of them had an old single-barrel shotgun; that the ground was rough and hilly near the spring, and deceased was ahead of him and going up the hill, and was holding his gun by the muzzle out in front, and he stumbled or slipped off a log or pole, and in the fall his gun fired and killed him; that it was wholly accidental; and that he did not shoot him and had nothing to do with the accident. He said:

"We were good friends, and had no words or trouble; and when I was leaving the spring a short distance from where James [deceased] was, and I run for help, pulling off my shoes and leaving them, and went home and got some of the neighbors and went back. When the accident occurred I was excited and hollowed to James I would get to him as quick as I could. I got to him, and saw he was bad shot, and then I ran for help more than a mile. When we got back he was dead."

The above testimony was corroborated by several state's witnesses in many particulars. His exclamation, "I will come (or get) to you as quick as I can," was heard and testified to by witness Arn Adams, who was within 200 yards and heard the gun fired and this exclamation. His shoes were left as stated by defendant. The gun of deceased had the empty shell in it, while that of the defendant was loaded when the parties got to the scene. The location, range, and character of the wound is such as would almost preclude the idea that some one had shot deceased, but it is apparent such wound could have been inflicted by the accidental discharge of the gun, held in deceased's hand by the muzzle, while falling, and there was

also evidence by state witness that on the log or pole near the body there was signs of some one having slipped thereon. All the facts as well as others in the record create doubt, and we may say a well-founded doubt, that the defendant fired the shot, and if he did not do so, or if there is a reasonable doubt as to whether he did or not, he should not be made to suffer therefor. As before stated, this court can only pass upon the correctness of the rulings of the trial court properly presented, and, these being free from error, we are unable to accord the relief to this defendant as indicated in the conclusion herein stated.

Affirmed.