**RUSSELL v. STATE.** (6 Div. 25.)

(Court of Appeals of Alabama. May 29, 1923. Rehearing Denied Oct. 30, 1923.)

**1. Witnesses ☜373—Predicate essential to admissibility of impeaching testimony should be laid before testimony is admitted.**

When a predicate is essential to the admissibility of testimony otherwise not pertinent to the case, the better practice is to require the predicate to be first laid, and, while the trial court possesses a large discretion in such matters, the refusal to admit evidence that a witness was living with Y. as his wife to show bias or prejudice before the predicate was laid by showing defendant also killed Y. was not reversible error.

**2. Witnesses ☜370(1)—Testimony as to feelings and relations of witness toward parties relevant.**

The feelings and relations of a witness toward the parties is never a collateral issue, and testimony bearing thereon is always relevant.

**3. Criminal law ☜1170(4)—Exclusion of testimony held harmless in view of subsequent testimony as to same fact.**

Refusal to permit witness for the state to answer question on cross-examination as to whether she was not friendly toward the defendant held harmless in view of subsequent testimony of witness that "I have a very kindly feeling toward him."

**4. Witnesses ☜240(4)—Question as to whether any one telephoned witness from certain house held leading.**

Question as to whether any one from a certain house occupied by named persons telephoned witness to send defendant to the house held objectionable as leading.

**5. Criminal law ☜448(2)—Question as to telephone conversation held to call for conclusion of witness as to source of conversation.**

Question as to whether any one from a certain house occupied by named persons telephoned witness to send defendant to the house held objectionable as calling for a conclusion of the witness as to the source of the telephone conversation.

**6. Homicide ☜339—Exclusion of testimony offered to show absence of premeditation held harmless in view of verdict.**

In homicide prosecution, exclusion of testimony offered to show absence of premeditation held harmless, in view of conviction of manslaughter, and not murder.

**7. Homicide ☜187—Evidence as to invitation to defendant to visit house in which killing took place held immaterial.**

In a homicide prosecution, excluded testimony that defendant was invited to the house in which the killing took place, offered for the purpose of showing that defendant's going to the house was not a fault that would deprive him of the right of self-defense, held immaterial, in view of the fact that the killing did not take place during such visit, but during a subsequent visit.

**8. Criminal law ☜1056(1) — Criticism of charge not excepted to not considered on appeal.**

Criticism of court's oral charge not predicated upon an exception reserved thereto will not be considered on appeal.

**9. Criminal law ☜1044—Argument of counsel not available on appeal in absence of motion to exclude.**

A mere objection to statement of counsel in argument is unavailing unless the argument is of such character that it becomes the court's duty to interfere ex mero motu, a motion to exclude the argument being necessary.

**10. Criminal law ☜761(6)—Homicide ☜300 (14)—Instructions on self-defense pretermitting freedom from fault, and assuming or pretermitting impending peril, properly refused.**

In homicide prosecution, refusal of instructions on self-defense held proper in that one pretermitted defendant's freedom from fault and assumed that he was in impending peril from an assault on the part of deceased, and another pretermitted impending peril.

**11. Homicide ☜194—Self-defense not available where killing takes place after all danger has passed.**

One is not justified in killing another on theory of self-defense after all danger has passed.

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Criminal law ☞830—Requested instruction containing clerical error in use of word in reference to elements of self-defense properly refused.**

In homicide prosecution, requested instruction predicated on a finding that "other officials of self-defense were present" held properly refused because of the use of the word "officials" for the word "elements."

**13. Homicide ☞300(14)—Instruction on self-defense properly refused for failure to require the necessity of killing to be apparent to the defendant.**

In a homicide prosecution, instruction on self-defense justifying the killing "if apparently necessary to a reasonable mind in order to prevent the commission of a felony" held properly refused for failure to require the necessity to be apparent to the defendant.

**14. Homicide ☞192—Self-defense not available where defendant invited attack.**

Self-defense is not available to a defendant who by his wrongful acts invited the attack.

*On Rehearing.*

**15. Witnesses ☞372(2) — Refusal to permit cross-examination of state's witness as to feeling toward defendant held error.**

- In a homicide prosecution in which the principal witness for the state on cross-examination testified that she had a very kindly feeling toward the defendant, the refusal to permit the state to further cross-examine her as to whether she did not have hatred for him arising because he killed the man she was living with, and under whose name she had been going, held error.

**16. Witnesses ☞372(1)—Accused should be permitted widest latitude on cross-examination of witness for state as to feeling toward defendant.**

The accused should be permitted the widest latitude on cross-examination of a principal witness for the state as to her feelings toward the defendant.

Appeal from Circuit Court, Jefferson County; H. P. Heflin, Judge.

George Russell was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded on rehearing.

On the trial the defendant asked his witness Fitzpatrick this question:

"I will ask you to state whether or not anybody from this house, No. 2004 Eighth avenue, where this Mrs. Young or Stevens or whatever her name was and Mattie Westbrook lived, and Guy Young and Walter Bonham—whether anybody telephoned you that afternoon to have George come down there that night."

The court sustained objection to this question, and defendant excepted.

These requests for instruction were refused to defendant:

"(19) I charge you, gentlemen of the jury, that, if from all the evidence in this case you have a reasonable doubt as to whether or not the deceased had been shot by the defendant while in the dining room of the house in question, and if in addition thereto you believe that the defendant had abandoned the difficulty, if you find that a difficulty did occur in the dining room, and sought to escape therefrom; and if you further believe from the evidence that the deceased shot at the defendant, and defendant came through the dining room into the hall, the defendant had there made a hostile demonstration towards the deceased, and there was no reasonable mode of escape open to the defendant which would not add to or increase his peril, that under those circumstances the defendant would have the right to repel the force of the attack upon him, if you find that such attack was there made, even to the extent of taking the life of the deceased.

"(20) I charge you, gentlemen, that it is the law that a man may repel force in defense of his person against one who manifestly intends or endeavors to take his life or inflict upon him great or grievous bodily harm, and, if there be no reasonable mode or method open to him to retreat without increasing his peril or adding thereto, or placing himself at a greater disadvantage, that then he is not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and, if he kill his adversary in so doing, it is justifiable self-defense, if in the first instance defendant were free from fault in bringing on the difficulty.

"(21) If the jury believe from the evidence in this case that the defendant at the time he shot the deceased, Bonham, was in such proximity to the deceased as to render it hazardous to attempt flight or to retreat, that then, if you find that the other officials of self-defense were present, the law would not require the accused to endanger his safety or to increase his danger by an attempt to retreat or an attempt of flight.

"(22) I charge you that the jury in this case should find the defendant, Russell, not guilty if the jury have a reasonable doubt as to whether or not the defendant acted in self-defense.

"(23) If the jury have a reasonable doubt, generated by all the evidence in this case, as to whether the defendant acted in self-defense or not, then they should acquit the defendant."

"(40) I charge you, gentlemen of the jury, that under our law any person is justified in slaying another if same be necessary, or apparently necessary, to a reasonable mind in order to prevent the commission of a felony by the person slain.

"(41) I charge you, gentlemen of the jury, that the defendant had the right to act so as to protect himself not only from a real attack but from an apparent attack if appearances were such as would impress the mind of a reasonable man that an attack was impending or about to be made, if he did act under the reasonable belief that such was the case.

"(42) I charge you, gentlemen, if you believe from the evidence in this case that the defendant was free from fault in bringing on the difficulty which resulted in the homicide, that then the defendant should be acquitted unless the jury believe from all the evidence beyond a reasonable doubt and to a moral certainty that

the defendant did not act in self-defense in killing Bonham.

"(43) I charge you, gentlemen of the jury, that, if you are reasonably satisfied from the evidence that the defendant himself did not provoke or bring on the difficulty resulting in the homicide, then the burden of proof would be upon the state to satisfy the jury beyond all reasonable doubt and to a moral certainty that the defendant could have retreated, and thereby have avoided the difficulty without endangering his own life or increasing his peril, and, further, the burden would be upon the state to show by the evidence beyond a reasonable doubt and to a moral certainty that the defendant did not act in self-defense, and if the state has failed therein then the 'defendant should be acquitted."

John W. Altman, of Birmingham, for appellant.

Defendant had the right to show bias and prejudice on the part of the prosecuting witness. Burton v. State, 194 Ala. 2, 69 South. 913; State v. Craft, 117 La. 213, 41 South. 550; Jackson v. State, 156 Ala. 93, 161, 47 South. 77; Patton v. State, 197 Ala. 180, 72 South. 401; Terry v. State, 13 Ala. App. 115, 69 South. 370; Byrd v. State, 17 Ala. App. 301, 84 South. 777.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The court correctly sustained objection to questions to the witness Stevens, seeking to show her relation with Young. Charges using the term "self-defense," without setting out the elements thereof, are defective. Windom v. State, 18 Ala. App. 430, 93 South. 79.

BRICKEN, P. J. The appellant was indicted for killing Walter Bonham, the indictment charging murder in the first degree; he was convicted of manslaughter in the first degree, and was sentenced to the penitentiary for a year and a day.

[1] On the cross-examination of Willie Stevens, a witness for the state, the defendant sought to elicit testimony showing that the witness and one Young, who was present at the time of the homicide, lived together as husband and wife. The appellant insists that this testimony was admissible for the purpose of showing interest or bias on the part of the witness, and in brief and argument assumes as a predicate for this contention that appellant killed Young at the same time that he killed Bonham. The vice of appellant's contention lies in the fact that the record does not sustain this assumed predicate. There was nothing in the evidence offered up to the time of this cross-examination, or for that matter at all, that showed or tended to show that Young was dead or that he was in any way injured on the occasion that Bonham was killed, and no question was asked this witness, or any other witness, that elicited any such testimony.

Pertinent to the question under consideration there is contained in the record this statement by appellant's counsel:

"We expect to show the interest of this woman, or determine why these men were staying there in the house, she claiming they were rooming together; calling them by their first name. One of them was killed; and perhaps the other was killed too, and if I cannot show that she cohabited with this man, and living as man and wife, then I cannot show that she has an interest of that extent in this case as a witness, to show her interest and bias as a witness. We expect the testimony to show that Young was killed there."

Some of this proffered testimony was wholly immaterial. "Why these men were staying there in the house," was not a pertinent or legitimate inquiry in this case. That Young was "perhaps killed," or that "Young was killed there," is wholly insufficient to authorize the projection of the inquiry into the relations between Young and Willie Stevens on the trial of the defendant for killing Bonham. Young "perhaps" was killed "there" on a different occasion from the occasion of Bonham's death, and, so far as the statement of counsel goes, the defendant was in no way connected with or responsible for his death. If it had been shown or evidence offered tending to show that on the same occasion that Bonham was killed Young was also killed by the defendant on trial, or that defendant was in any wise responsible for Young's death, evidence showing or tending to show ties of love, affection, or interest between witness and Young, whether legitimate or illegitimate, would have been competent and admissible on the issue of bias or prejudice on the part of the witness. McSwean v. State, 10 Ala. App. 163, 64 South. 543; Dickey v. State, 15 Ala. App. 135, 72 South. 608; Ex parte Dickey v. State, 197 Ala. 610, 73 South. 72; Cook v. State, 152 Ala. 66, 44 South. 549.

When a predicate is essential to the admissibility of testimony, otherwise not pertinent to the case on trial, the better practice in criminal trial is to require the predicate to be first laid, and, while of necessity, the trial court possesses a large discretion in such matters, on appeal the trial court will not be put in error for refusing to admit the evidence before the predicate is laid.

[2, 3] The feelings and relations of a witness toward the parties is never a collateral issue, and testimony bearing thereon is always relevant. Dickey v. State, supra; Cook v. State, 152 Ala. 66, 44 South. 549. It was error, therefore, for the court to sustain the objection of prosecution to the question asked the witness Willie Stevens on cross-examination, "You are not friendly to the man, the defendant George Russell?" However, this error was rendered innocuous by the subsequent testimony given by the wit-

ness immediately following this ruling, "I have a very kindly feeling toward him."

[4, 5] The first question propounded by the defendant's counsel to the witness Mrs. Fitzpatrick, and made the basis for appellant's fourth insistence, was subject to the objection that it was leading, and called for a conclusion of the witness, as to the source of telephone conversation, and hence the state's objection was properly sustained.

[6, 7] As to the other question embodied in this insistence, "State whether or not on the night, or evening, late in the evening, Mattie Westbrook telephoned your house, and instructed you or asked you to tell your brother George to come down there that night; and state whether or not you did tell him when he come home from his work." It is indefinite and uncertain as to the time of the telephone conversation. Counsel no doubt had in mind the night or evening Bonham was killed by the defendant, but the question does not so state. However, assuming that the question was proper in all respects, the sustaining of the objection does not constitute reversible error in this case, and for reasons which we now state:

The testimony elicited by this question was for the purpose of accounting for defendant's presence at the scene of the homicide, and was material, if at all, for the purpose of showing the absence of premeditation, and that defendant's going to this place was not a fault that would deprive him of the right of self-defense.

The verdict for manslaughter in the first degree was an acquittal of the defendant for murder, and hence the materiality of the inquiry as to the element of premediation is thus rendered wholly immaterial.

The appellant testified, and on this point his testimony was without dispute:

"I received a message to come down to that house where the trouble was that night. I got there about 8:15 that night. Bonham wasn't there when I went in, but I saw him. The first time I went there I saw him, but did not speak to him. I hardly stayed there five minutes that time. I went away that time and come back. I went back by invitation. That I was invited back, and when I went back the second time I did not see Bonham or Mattie Westbrook."

From this testimony it appears that the first visit of the appellant was in no way connected with the difficulty in which Bonham was killed. Nothing resulted from appellant's first visit, he did not speak to Bonham, neither did Bonham speak to him; and as appellant left after this first visit he was invited to return. Therefore whether he was invited to the house on the first occasion or whether he went there uninvited could not be material on the question of his freedom from fault.

[8] The criticism of the court's oral charge by appellant is not predicated upon an exception reserved thereto on the trial, and nothing is presented for review. McPherson v. State, 198 Ala. 5, 73 South. 387.

[9] A mere objection to the statement of counsel made in argument, as has been repeatedly held, is unavailing unless the argument is of such character that it becomes the duty of the court to interfere ex mero motu, and for the reason that objection, whether overruled or sustained, does not exclude the objectionable statement. Therefore to put the court in error motion must be made to exclude the argument. Boyett v. State, 18 Ala. App. 363, 92 South. 515; Lambert v. State, 208 Ala. 42, 93 South. 708.

[10] Charge 19 refused to defendant pretermits defendant's freedom from fault, and assumes that he was in impending peril from an assault on the part of deceased.

[11] Charge 20 pretermits impending peril, and in the absence of such peril relieves of the duty to retreat. Assuming that this charge embodies the element of impending peril, it is subject to the further vice that it authorizes pursuit until all danger has passed. This is not the law.

[12] Charge 21 is bad for the use of the word "officials" for "elements," and is otherwise faulty.

Charges 22, 23 and 42 are in a class that has been repeatedly condemned. Windom v. State, 18 Ala. App. 430, 93 South. 79. Charge 43 misplaces the burden of proof (Springfield v. State, 96 Ala. 81, 11 South. 250, 38 Am. St. Rep. 85), and is subject to the same vice as charges 22, 23, and 42.

[13] Charge 40 is not only inapt, but is inherently unsound. It justifies one in slaying another if it is "apparently necessary to a reasonable mind to prevent the commission of a felony, although the slayer may know that such necessity does not exist.

[14] Charge 41 authorizes the defendant to act so as to protect himself from real or apparent attack which he may have invited through his wrongful acts.

Reversible error is not shown, and the judgment of the circuit court is affirmed.

Affirmed.

### On Rehearing.

[15] As stated in the opinion, the feelings and relations of a witness towards the parties is not a collateral issue, and testimony bearing thereon is always relevant. Byrd v. State, 17 Ala. App. 301, 84 South. 777. In view of this oft-announced rule it is difficult to understand upon what theory the trial court ruled with the state wherein counsel for the state undertook, by repeated objections, to prevent appellant's counsel from showing that the feelings of state witness Willie Stevens were unfriendly to the ac-

cused, appellant here. This witness, Willie Stevens, was the principal witness for the state in this case, and upon her testimony the state relied for a conviction. It is therefore manifest if at the time of this trial she was biased against the defendant for any reason that fact was most material. and the defendant should have been permitted to show it. But the court sustained the objection interposed by the special prosecuting attorney to the questions seeking to elicit the fact of the unfriendly feelings of the witness Stevens to the defendant. In the opinion this court held that such ruling was error, but announced that the error was rendered innocuous by the subsequent testimony given by the witness wherein she stated: "I have a very kindly feeling toward him." To this extent the opinion rendered is unquestionably sound. But our attention is called, upon rehearing, to the fact that by the further ruling of the court the defendant was denied the right of testing the sincerity and bona fides of the statement by the witness as to her friendly feelings toward defendant. And our attention is directed to the following occurrence in this connection. as shown by the record: After witness Stevens had stated, "I have a very kindly feeling toward him [defendant]":

"Whereupon the attorney for defendant propounded to the witness the following question: Now isn't it a fact that you haven't a friendly feeling toward him, but have hatred for him arising out of the fact that he killed that man you were living with named G. H. Young, and under whose name you had been going? Whereupon the special prosecuting attorney, Mr. Hill, objected to the question, and the court sustained the objection. The attorney for the defendant duly reserved an exception to this ruling of the court."

[16] In this ruling the court committed reversible error. The mere fact that the witness had answered, "I have a very kindly feeling toward him," was not conclusive, and the defendant had the right as he undertook to do, to examine the witness further in order to test the sincerity of the witness and the bona fides of her statement, and the truthfulness thereof, and the credibility of the witness, and to this end the accused should have been permitted the widest latitude on cross-examination. Underhill, Criminal Evidence (2d Ed.) § 222. Ex parte Morrow, Morrow v. State, 210 Ala. 63, 97 South. 108, and cases cited.

Other questions insisted upon on rehearing need not be considered. Application for rehearing granted. Judgment of lower court reversed, and cause remanded.