329 So.2d 120
**Jerry David MANESS**

**v.**

**STATE.**

**8 Div. 666.**

Court of Criminal Appeals of Alabama.

Jan. 20, 1976.

Rehearing Denied Feb. 17, 1976.

William J. Baxley, Atty. Gen., and G. Daniel Evans, Asst. Atty. Gen., for the State.

Lee & Lee, Scottsboro, for appellant.

TYSON, Judge.

The appellant was indicted for the first degree murder of W. L. Neeley "by striking him with his fists." At trial, the jury found the appellant guilty of manslaughter in the first degree and fixed punishment at ten years imprisonment. The trial court then pronounced judgment, setting sentence in accordance with this verdict.

Dr. Frank Haws testified that he examined W. L. Neeley in the Huntsville Hospital emergency room at approximately 8:30 p. m. on the night of December 19, 1974, at which time the patient was deeply unconscious, having been transferred from Scottsboro for the treatment of a head injury. Dr. Haws stated that Neeley's condition deteriorated thereby necessitating certain surgical procedures; tracheotomy, arteriogram, and craniotomy, each of which he described in court. Dr. Haws explained that in spite of his efforts, the patient did not improve and passed away at 5:55 a. m. on December 21, 1974. Dr. Haws concluded his testimony by stating that death was a result of cerebral contusion, complicated by subdural hematoma, fracture of the nasal bone, and multiple contusions of the face.

Johnny Presley testified that on the afternoon of December 19, 1974, he and the appellant were riding around in appellant's truck. He stated that around 5:00 p. m. they noticed W. L. Neeley's car parked in front of Bob Creed's house in Davistown in Jackson County and appellant said that he wanted to speak with Neeley, so they pulled in. Presley said that Neeley and his daughter came out of the house and Neeley told them to follow him home, and they would have a drink of whiskey. He said that at an intersection, not far from Creed's house, Neeley got out of the car

his daughter was driving and walked back and got into the truck with them because his daughter wanted to go and see her boyfriend. Presley stated that he and appellant had been drinking beer and that they offered one to Neeley. He explained that the three men drove about two miles and then pulled over to the side of the road to relieve themselves. The witness continued by saying that, while standing at the back of the truck, he heard a "commotion" and walked around the side of the truck and found Neeley lying on his back on the shoulder of the road with appellant bent over him, swinging at him with his fists. He said that he intervened and "raised appellant up," that the appellant then offered to take Neeley home, but that Neeley refused, saying, "Hell, no, let me stay here." Presley stated that the appellant carried him home where his father, Jim Presley, told appellant to go on home, that he would go back and see about "W. L." The witness said that he and his father then went back to the scene of the fight, picked up Neeley, and headed toward the hospital in Scottsboro. Presley testified that prior to the fight he had noticed only one small mark on the deceased's forehead.

Deputy Sheriff Claude Morgan testified that he met the car driven by Jim Presley which was carrying W. L. Neeley to receive medical aid. He stated that he called an ambulance and then checked Neeley and discovered that he had quit breathing. Morgan said that he administered artificial respiration until the ambulance arrived.

Mrs. W. L. Neeley, wife of the deceased, testified that she was a licensed practical nurse at Jackson County Hospital and that she was on duty the evening of December 19, 1974, when her husband, face badly bruised and unconscious, was brought into the emergency room at approximately 7:00 p. m. Mrs. Neeley stated that on the recommendation of Dr. Jones, her husband was transferred to Huntsville where he was treated by Dr. Haws, but, nonetheless, died without ever regaining consciousness.

She said that her husband weighed between 140 and 150 pounds and stood 5'5" tall.

On cross-examination, Mrs. Neeley said that several weeks prior to his death, her husband had been laid off from work, at which time he began drinking.

Another deputy sheriff, Mike Wells, identified several photographs of the body of the deceased that were taken in his presence in the Scottsboro Funeral Home. These photographs were then admitted into evidence as State's Exhibits Nos. 1–3.

At this point the State rested and appellant's motion to exclude was denied.

The first witness called by the defense was Walter Goggans. Mr. Goggans stated that he operated a store in Jackson County where the deceased traded. He said that Neeley came by the store on the afternoon of December 19, 1974, at which time he had bruises "all over his face." Goggans added that Neeley had been drinking.

The appellant's, Jerry Maness', testimony essentially was the same as that of the State's key witness, Johnny Presley. Appellant added, however, that when he got out of the truck to go to the bathroom, he told Neeley that he wanted to talk with him about some obscene phone calls that his, appellant's, mother had received. Appellant stated that Neeley admitted making the calls and then further vilified his mother. He explained that Neeley swung first and that the fight lasted only a very short while before Johnny Presley intervened. Appellant also said that Neeley's face was already severely bruised when he got in the truck with Presley and him, and that after the fight he did not realize that Neeley had been seriously injured. He concluded by saying that after he learned of Neeley's death, he turned himself in at the Jackson County Sheriff's Office.

On cross-examination, the appellant said that at the time of the fight, he weighed about 210 pounds.

Officer Max Robertson of the Jackson County Sheriff's Department testified that on the morning of December 21, 1974, the appellant entered the Sheriff's office of his own volition and made a statement to the effect that Neeley had started the fight and that he, the appellant, used only his fists in defending himself. Robertson added that he noticed a scab on one of the appellant's hands and a bruise on his forearm where appellant claimed that Neeley had kicked him.

In rebuttal for the State, Jimmy McKee testified that he had seen W. L. Neeley after supper on the night of December 18, 1974, at which time he observed only a single small scratch on Neeley's face.

Appellant's written request for the affirmative charge was refused, and his motion for a new trial was overruled after a hearing thereon.

I

■ Appellant first contends the trial court erred in allowing into evidence photographs of the deceased, marked State's Exhibits Nos. 1–3. He argues that the photographs are highly prejudicial because of the "surgical incisions" that appear.

In *McKee v. State,* 253 Ala. 235, 44 So. 2d 781, the Court stated:

"'* * * The sole question is whether the physical evidence will assist, and not mislead, the jury in understanding the matter before them. It is not necessary that the object sought to be admitted be in exactly the same condition as at the time of the occurrence of the fact that it is intended to illustrate; such a requirement would make evidence of this nature inadmissible in practically all cases, since it is hardly ever possible to reproduce conditions exactly. . . . There was no error in admitting in evidence a photograph of the deceased, taken after the performance of an autopsy, even though the photograph showed marks of incisions made for the purposes of the autopsy, the autopsy surgeon pointing out

to the jury the marks resulting from his examination.' . . .."

Here, prior to the introduction of the photographs into evidence, Dr. Frank Haws had already testified, therein describing each of the three operations that he had performed upon W. L. Neeley. Furthermore, the trial court instructed the jury to limit their consideration of the photographs to those areas unaffected by the surgery.

We are of the opinion that the marks resulting from surgery were sufficiently pointed out to the jury. *Gaddis v. State*, 39 Ala.App. 630, 106 So.2d 268; *Means v. State*, 51 Ala.App. 8, 282 So.2d 356, cert. denied 291 Ala. 792, 282 So.2d 359; *McKee v. State*, supra.

The photographs in question were properly admitted as they tended to shed light on the acts, motive, and intent of the appellant. *Snead v. State*, 251 Ala. 624, 38 So.2d 576; *Massey v. State*, 49 Ala.App. 341, 272 So.2d 267, cert. denied 289 Ala. 747, 272 So.2d 270; *Means v. State*, supra.

II

■ During the cross-examination of the State's eyewitness, Johnny Presley, appellant's counsel moved the trial court to order the prosecution to produce an alleged "statement" given to State authorities by Presley and the court refused.

In *Cooks v. State*, 50 Ala.App. 49, 276 So.2d 634, cert. denied 290 Ala. 363, 276 So.2d 640, it was held:

"The first requisite necessary to secure for inspection production of a 'statement' of a witness for use on cross examination of the witness is that the statement must be one in writing prepared by him or prepared by another at his instance and signed by him or otherwise authenticated by him. In the instant case there was nothing to indicate by query of the witness by the defense or otherwise that the witness had given to any officer a written statement signed or authenticated by her. There was not laid in the evidence any showing that any statement made by the witness to officers before trial differed in any respect from statements made to the jury during trial. See *Bellew v. State of Mississippi*, 238 Miss. 734, 106 So.2d 146, cited with approval in the *Mabry* case, supra. Neither was there any such showing of inconsistency in testimony given by the witness at a preliminary hearing previously held and the testimony given by her on the trial before the jury. There is no showing that the statement requested, if any, was of such nature that without it the defendant's trial would be fundamentally unfair. The production for inspection of any such statement as above defined lies within the sound discretion of the court and we find no abuse of that discretion in the ruling here made. See Annotation, Right of Defendant in Criminal Case to Inspection of Statement of Prosecution's Witness for Purpose of Cross Examination or Impeachment, 7 A.L.R.3d, pp. 181, 217, 219, 213 citing the *Mabry* case, supra, and the authorities therein noted."

After a review of the evidence adduced at the hearing on appellant's motion for a new trial, we are clear to the conclusion that the unsigned notes in question did not amount to a statement as defined in *Cooks*, supra, but merely represented the work product of a county investigator's interview of a prospective witness, and as such were not subject to appellant's motion to produce. *Mabry v. State*, 40 Ala.App. 129, 110 So.2d 250; *Thigpen v. State*, 49 Ala. App. 233, 270 So.2d 666; *Fortenberry v. State*, 55 Ala.App. 1, 312 So.2d 573; and *Cooks*, supra.

III

Appellant next cites us to three instances in the record where he insists that the trial court committed reversible error in overruling his motions for a mistrial.

During the cross-examination of defense witness Walter Goggans, the district attorney asked, "You know about him having other fights, and you are scared of him, aren't you?" [R. p. 86]

Later, during the direct examination of a State's rebuttal witness, Jimmy Moore, the district attorney asked the witness, "Do you know the general reputation in the community out there of Mr. Jerry David Maness, as to peace and quiet?" [R. p. 125]

■ Neither of these questions were answered. In each instance, the trial court immediately sustained appellant's objection and charged the jury to disregard the question even though no answer had been elicited. The trial court therefore properly overruled appellant's motions for a mistrial. *Lowe v. State,* 48 Ala.App. 740, 267 So.2d 529; *Crouch v. State,* 53 Ala.App. 261, 299 So.2d 305, cert. denied 292 Ala. 718, 299 So.2d 312.

In his closing argument for the State, the district attorney commented, "The State has one chance. The State cannot appeal." [R. p. 13]

■ Again, appellant's objection was sustained and the trial court immediately instructed the jury that they were to totally disregard the district attorney's statement. The court added that the jury's sole responsibility was to determine the guilt or innocence of the defendant of the charge in the indictment, and that whether or not the State could appeal had absolutely nothing to do with the case. The trial court concluded by asking the jury, "Is there any one of you who feels that they are not able to disregard that statement? I take it that *no person had signified affirmatively, that you can all disregard the statement?"* There was no response from the jury. The court was correct in overruling appellant's motion for a mistrial based on improper argument by the district attorney. *Divine v. State,* 279 Ala. 291, 184 So.2d 628; *George v. State,* 54 Ala.App. 90, 304

So.2d 908; *Adair v. State,* 51 Ala.App. 651, 288 So.2d 187.

■ Neither do we believe that the cumulative effect of the aforementioned questions and statement was such as to create an ineradicable atmosphere of prejudice and bias toward the appellant when, as here, the court in each instance sustained the appellant's objections and admonished the jury to disregard such. *McAllister v. State,* 44 Ala.App. 511, 214 So.2d 862.

In view of the prompt action of the trial court, error to reversal is not here shown. Authorities cited, and *West v. State,* 54 Ala.App. 647, 312 So.2d 45, cert. denied 294 Ala. 78, 312 So.2d 52.

IV

Finally appellant argues that the trial court committed reversible error by refusing his requested charges, Nos. 19, 20, and 21, dealing with the defense of self-defense as it relates to an assault and battery. Though not all worded exactly alike, each of these charges stands for the general proposition that the doctrine of retreat, as applied to self-defense in a criminal homicide, i. e., murder or manslaughter, is not applicable to the right of self-defense in an assault and battery situation, or stated slightly differently, one is not required to retreat before using *non-deadly* force in one's own defense.

Appellant was tried on a first degree murder indictment and the jury returned a verdict finding him guilty of manslaughter in the first degree. In its oral charge, the trial court charged the jury on first and second degree murder, first and second degree manslaughter, *and assault and battery.* The trial court then charged the jury as to the law of self-defense in a criminal homicide, but failed to do so with respect to an assault and battery.

It is to be noted that, unlike *Weldon v. State,* 50 Ala.App. 477, 280 So.2d 183, relied upon so heavily by appellant in brief, the jury in the instant case was charged as to the lesser included offense of assault and battery and could therefore have returned a verdict finding appellant guilty of such lesser charge only. However, the jury made a finding of fact as evidenced by their verdict, that the appellant used *deadly* rather than *non-deadly* force against Neeley. That being the case, any error by the trial court in refusing appellant's charges delineating his duty to retreat vel non before using *non-deadly* force to defend himself was rendered harmless.

Under Rule 45, Alabama Rules of Appellate Procedure, we have carefully considered the entire testimony, and conclude that, in view of the severe beating administered to the deceased, which, in the opinion of Dr. Haws, was the contributing cause of death, the possibility of death being attributable to a prior encounter was only theoretical. Accordingly, the trial judge, in giving a charge as to assault and battery as a lesser included offense, gave the defendant a possible benefit to which he was not legally entitled under the evidence. Therefore, the refusal of these charges, Nos. 19, 20, and 21, was not error since, in our opinion, assault and battery was not shown.

Moreover, the jury, by its verdict, chose not to give credence to any hypothesis based upon assault and battery or involuntary manslaughter.

We have carefully examined this record and find same to be free from error. The judgment of the trial court is due to be and the same is hereby

AFFIRMED.

All the Judges concur.