355 So.2d 392 (1977)
Donald THIGPEN
v.
STATE.
3 Div. 656.
Court of Criminal Appeals of Alabama.
August 16, 1977.
Rehearing Denied October 4, 1977.
*394 John L. Jernigan, III, of Stokes & Jernigan, Brewton, for appellant.
William J. Baxley, Atty. Gen., Larry R. Newman, Montgomery, and G. Guy Hayes, Asst. Attys. Gen., for the State.
TYSON, Presiding Judge.
Donald Thigpen was charged by indictment with the first degree murder of one Henry Lambeth. Such indictment also included reference to a prior first degree murder conviction of the appellant. The jury found the appellant guilty of first degree murder, as charged, and fixed punishment at death by electrocution pursuant to the provisions of Title 14, Section 319, Code of Alabama 1940. The trial court entered judgment accordingly.
Birmingham City Police Officer O. C. Ellard identified the appellant, Donald Thigpen, as being the same person who was previously convicted in the Circuit Court of Jefferson County, Alabama for first degree murder (Jefferson County Circuit Court No. 22727). See Thigpen v. State, 50 Ala.App. 176, 277 So.2d 922. A certified copy of the prior judgment was then received in evidence.
Mr. Winston Grant, a dog trainer with the State Board of Corrections, testified that on the morning of April 17, 1975, he arrived at a deserted barn located on a field approximately one-half mile from the home of the deceased, Henry Lambeth. Grant was aware of an escape involving some eleven inmates of the Holman Prison the preceding day. He indicated that the body of an elderly white male was propped up in a window of the deserted barn. The body was later identified as Lambeth. Blood stains were observed just below the window on the ground and also just below a fence, approximately twenty feet from the barn. Grant observed some fence poles lying on the ground, and one of these had blood stains on it. Also found near the fence was an ax or hatchet, and on the fence was a patch of "Negroid hair." Mr. Grant also backtracked footprints which led back into the woods in the direction of Holman Prison, a distance of three miles. Mr. Grant then notified other law enforcement officials who secured the area and delivered the items of physical evidence to the State Toxicology Office for examination.
Dr. James L. Small of the State Department of Toxicology testified that he performed an autopsy on the body of Henry Lambeth. An examination revealed the skull had been fractured, and Dr. Small stated that in his opinion death resulted from hemorrhage, bleeding, and trauma to the brain and skull associated with blows to the head. Dr. Small's testimony indicated that a blunt instrument was used to inflict these blows and also a "V-shaped" laceration to the skull was consistent with a wound from the ax or hatchet.
Dr. Small also testified that he examined and tested clothing worn by the appellant, Donald Thigpen, during his escape from Holman Prison. He stated that he found human blood on appellant's blue jeans, shirt, and undershirt. Tests revealed that this blood was "Group O," the same as the victim's, Lambeth (Volume II, R. pp. 104-108).[1]
Moreover, tests revealed that the hairs found on the barbwire fence near the barn, where the victim's body was found, were "Negroid human hairs." Subsequent tests *395 run on the ax found near the murder scene revealed no fingerprints which were legible, nor any traces of blood.
Alabama State Trooper Frank Bracken testified that on April 17, 1975, he was driving on Interstate Highway 65, North of Evergreen, Alabama, when he observed a pickup truck speeding. He and his companion, an auxiliary deputy, gave pursuit at speeds up to 80 and 90 miles per hour. Upon stopping the pickup truck, the appellant and his companion, Pedro Williams, were apprehended. Noticing that the two men were dressed in prison garb, Trooper Bracken asked them about the pickup truck in which they were riding, after first giving them a full Miranda, warning. The appellant, Donald Thigpen, stated that they had stolen it from a man who was feeding cows in a pasture (Volume II, R. p. 59). Trooper Bracken then radioed for assistance, and State Trooper Lambert picked up Thigpen and his companion, Pedro Williams, and took them back to Holman Prison. The pickup truck was taken to the State Troopers' Office in Evergreen where Mrs. Lambeth, wife of the victim, and her son recovered same.
Mrs. Henry Lambeth, wife of the victim, testified that on the morning of April 17, 1975, her husband arose around 4:00 o'clock, dressed in overalls, and advised her that he was going to repair a fence in a pasture. She last saw him at 6:00 o'clock as he drove away in the pickup truck, which he owned, to the pasture. She stated that she was later notified that the pickup truck was at the State Trooper's Office in Evergreen, and that her son took her there to get it.
Mr. Lambeth's (the deceased's) daughter-in-law, Melba Lambeth, gave the victim's age as 68 (Volume II, R. p. 25).
The appellant's motion to exclude the State's evidence was overruled.
Appellant called Pedro Williams, his accomplice. Williams testified that he and the appellant were present on the morning of April 17, 1975, at the scene where Mr. Lambeth's body was found (Volume II, R. p. 118). He testified that he and Thigpen had escaped from Holman Prison the preceding day, and had hidden in the woods during the night. Williams testified that he had plead guilty to a second degree murder charge arising from the death of Mr. Lambeth and received a 99 year sentence.
Williams then indicated that it was he who took the fence pole and struck Mr. Lambeth in the head, which caused his death. He stated that he and Thigpen then took the victim's body and propped it up in the window of the barn and fled in Lambeth's pickup truck, then was subsequently arrested by State Troopers on Interstate 65 near Evergreen.
Donald Thigpen took the stand in his own behalf and testified as to his escape with Williams and nine other inmates from Holman Prison on April 16, 1975. He stated that he and Williams separated from the others and spent the night of April 16-17, 1975, wandering in the woods, a few miles from the prison. Early the following morning, Thigpen indicated that Williams saw an elderly white man working on a fence in a pasture, and they approached him. He stated they asked Mr. Lambeth if they could help him, and he told them he did not need any help. He stated that Williams then took a fence pole and struck Lambeth in the head, and that he helped Williams take the body to the barn and place it in a window. He denied striking Mr. Lambeth with either a pole or an ax, but stated that Williams had killed Lambeth. Thigpen stated that he and Williams drove off in Lambeth's pickup truck and were subsequently arrested on the Interstate by State Troopers.

I
The attorneys for the appellant did not challenge the constitutionality of the death penalty here imposed pursuant to Title 14, Section 319, Code of Alabama 1940.
Nevertheless, this Court is compelled to address this issue since the appellant was convicted of first degree murder while serving a life sentence for first degree murder (See Thigpen v. State, 50 Ala.App. 176, 277 *396 So.2d 922), and a sentence of death by electrocution was imposed by the trial judge and jury.
In Roberts v. Louisiana, 428 U.S. 325, 334, 96 S.Ct. 3001, 3006, 49 L.Ed.2d 974, the Supreme Court of the United States stated:
"Only the third category of the Louisiana first-degree murder statute, covering intentional killing by a person serving a life sentence or by a person previously convicted of an unrelated murder, defines the capital crime at least in significant part in terms of the character or record of the individual offender. Although even this narrow category does not permit the jury to consider possible mitigating factors, a prisoner serving a life sentence presents a unique problem that may justify such a law. See Gregg v. Georgia, ante, 428 U.S. [153] at 186, 96 S.Ct. [2909] p. 2931 [49 L.Ed.2d 859]; Woodson v. North Carolina, ante, 428 U.S. [280] at 287 n. 7, 292-293 n. 25, 96 S.Ct. [2978] p. 2983 n. 7, 2985 n. 25 [49 L.Ed.2d 944]." 428 U.S., at 334, 96 S.Ct., at 3006 (emphasis added).
In Roberts v. Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977), the Supreme Court of the United States once again expressed the view that the constitutionality of a mandatory death sentence for a prisoner who commits first degree murder while serving a life sentence was an open question. This court, therefore, adheres to the views expressed by us in Harris v. State, Ala.Cr.App., 352 So.2d 460 (1 Div. 623), which upholds the constitutionality of Title 14, Section 319, supra.

II
Appellant contends that the trial court erred in denying, in part, his "motion for production and inspection" which consisted of the following items (Volume I, R. p. 41):
"1. Any statement, if written, or notations by investigative authorities of verbal recitations made by the defendant, if the same are to be used in the trial of the defendant.
"2. Any statement, if written, or notations by investigative authorities of verbal recitations and/or written recitations made by any person in connection with the investigation of the alleged crime of which the defendant has been accused.
"3. Any medical, scientific, chemical or toxicologist reports received by the investigative authorities in connection with the crime of which the defendant has been accused.
"4. Inspection of clothing, weapons, or any other real evidence becoming a part of the investigation of the crime of which the defendant is accused, including, but not limited to, photographs taken by the investigative authorities.
"5. Statements of any and all witnesses taken by the investigative authorities in connection with their investigation of the crime of which the defendant is accused."
At the pretrial hearing on said motion, the State informed appellant's counsel that there was no statement made by the defendant in the State's possession [Item No. 1]. The trial court denied appellant's motion for the production of items listed in paragraphs two and five as these requests asked for the State's "work product." The trial court did not err in denying appellant's request for the items listed in paragraphs two and five as such items are the work product of the State and are privileged from discovery. Thigpen v. State, 49 Ala. App. 233, 270 So.2d 666; Maness v. State, 57 Ala.App. 431, 329 So.2d 120, cert. den., 295 Ala. 411, 329 So.2d 126; Cooks v. State, 50 Ala.App. 49, 276 So.2d 634, cert. den., 290 Ala. 363, 276 So.2d 640.
The State arranged for the appellant to inspect all of the items in the State's possession listed in paragraph three, and all the items listed in paragraph four with the exception of photographs. The trial court did not err in denying appellant's motion for the production of photographs taken by investigative authorities. Sanders v. State, 278 Ala. 453, 179 So.2d 35; McCants v. State, 282 Ala. 397, 211 So.2d 877.
The appellant requested that the State furnish a copy of the appellant's prior criminal record. The State informed the *397 court that they did not have a copy of such record in their possession. The trial court denied appellant's request, but did order the State to furnish the appellant a copy of the judgment under which the appellant was serving a life sentence. The trial court's action was proper. Strange v. State, 43 Ala.App. 599, 197 So.2d 437, cert. dismissed, 280 Ala. 718, 197 So.2d 447.

III
Appellant contends that the trial court erred by admitting into evidence a certified copy of appellant's prior conviction under which appellant was serving a life sentence (See Thigpen v. State, 50 Ala.App. 176, 277 So.2d 922).
The appellant was convicted of first degree murder and sentenced to death pursuant to Title 14, Section 319, Code of Alabama 1940, Recompiled 1958. It reads as follows:
"Punishment when committed by convict. Any convict sentenced to imprisonment for life, who commits murder in the first degree, while such sentence remains in force against him, shall, on conviction, suffer death."
When there is an allegation as to a former conviction in an indictment, this former conviction becomes an issue, and evidence of it at trial is necessary for the indictment to have operation. Funches v. State, 56 Ala.App. 22, 318 So.2d 762, cert. den., 294 Ala. 757, 318 So.2d 768; Amerson v. State, 40 Ala.App. 540, 117 So.2d 406. Since such an allegation was in the indictment, a certified copy of the judgment is competent and admissible to prove this issue. Williams v. State, 130 Ala. 31, 30 So. 336; Yates v. State, 245 Ala. 490, 17 So.2d 777.

IV
During closing argument, the appellant contends that the trial court erred in allowing the prosecutor to read from a statement made by Pedro Williams, a co-escapee and original co-defendant (Volume II, p. 152). The record shows that this statement had been received into evidence (Volume II, pp. 138-139, State's Exhibit 17) by stipulation of the parties. The trial court sustained appellant's objection to reading portions of the statement and directed the parties to confine their arguments to matters received in evidence. Thus, no error is shown.

V
Appellant contends that error occurred during closing argument, as follows (Volume II, R. pp. 154-155):
"MR. STEPHENS: `. . . If you recall he testified from the stand he was accused of killing his wife from Jefferson County and that is what he was serving under. This is the second day of May, 1972. (At which time Mr. Stephens read STATE'S EXHIBIT 1, a judgment entry from Jefferson County.) . . .
[W]hich was later changed after the ruling of FURMAN against GEORGIA came in.'
"MR. LOVELACE: I object to that. Nothing is here that they changed it by the ruling except they changed it.
"MR. STEPHENS: `. . . I would address your attention to . . ..'
"THE COURT: The objection is sustained to the remark about FURMAN VERSUS GEORGIA.
"MR. STEPHENS: All right."
A certified copy of appellant's prior conviction under which he was serving a life sentence had been received in evidence and therefore was already before the jury. As to the prosecutor's reference to "Furman against Georgia," the appellant did nothing further than to object, and such objection was sustained. The appellant did not move to exclude such statement, or move for a mistrial, or invoke a further ruling by the trial court, therefore this question is not properly presented for review. Veith v. State, 48 Ala.App. 688, 267 So.2d 480; Lambert v. State, 208 Ala. 42, 93 So. 708; Elliot v. State, 19 Ala.App. 263, 97 So. 115; Boyett v. State, 18 Ala.App. 363, 92 So. 515. Moreover, the reference to such case citation (Furman v. Georgia) is not error.

*398 VI
During the cross-examination of Pedro Williams concerning a prior statement which he had given to investigating officers on a specific date (Volume II, p. 130) and at a specific time and place, Williams replied that he did not remember making such statement. In this prior statement Williams had implicated the appellant as being the person who actually killed the deceased, Mr. Henry Lambeth.
During his direct examination, Williams stated that he, himself, was the person who had killed Mr. Lambeth.
During his redirect examination, Williams testified that his lawyer had told him to make the original statement and that he would only get a 99 year sentence instead of death or life imprisonment.
The matter now complained of is a purported side-bar remark by the prosecutor when he was interrogating Williams.
Under the circumstances outlined above, the prosecution, having laid a proper predicate as to the time, place, and circumstances, and persons involved, the witness was properly impeached as to his prior contradictory statement. Sparks v. State, 261 Ala. 2, 75 So.2d 103, and authorities cited therein; Edgeworth v. State, 54 Ala.App. 93, 304 So.2d 911.
Moreover, there was no further objection or motion on appellant's part invoking a further ruling of the trial court on this matter. Thus, no error is shown.

VII
Appellant further asserts as error admission into evidence of certain photographs of the victim, contending that such are gruesome and showed blood, and that they were thus inadmissible.
We are of the opinion that such were properly admitted on the authority of Smarr v. State, 260 Ala. 30, 68 So.2d 6; Nichols v. State, 267 Ala. 217, 100 So.2d 750; Brodka v. State, 53 Ala.App. 125, 298 So.2d 55.

VIII
Appellant contends the trial court should have sustained his challenge for cause as to Mr. Grissett, who was a retired employee, who formerly worked at Holman Prison for some sixteen years. Mr. Grissett stated that he had been retired for more than a year at the time of trial.
We are of the opinion that the trial court properly disallowed this challenge for cause. Title 30, Sections 55 and 57, Code of Alabama 1940.

IX
The appellant contends that the trial court erred in refusing to give several written requested charges. The trial court gave fourteen of such requested charges and refused fifteen others. Such refused charges were either affirmative in nature, abstract, incorrect statements of the applicable law, or were fully and substantially covered by the trial court's oral charge (to which no exception was taken), or covered by other charges given at the request of the appellant. Title 7, Section 273, Code of Alabama 1940.
Having carefully examined this record, we find no error therein. The judgment of conviction is therefore affirmed.
We will defer setting a date for the execution of this sentence until this case has been fully reviewed in the courts.
AFFIRMED.
DeCARLO and BOOKOUT, JJ., concur.
HARRIS and BOWEN, JJ., concur in result.

ON REHEARING
TYSON, Presiding Judge.
After the original briefs were filed in this Court by the attorneys representing both the appellant and the State of Alabama, this Court entered an order directing that additional briefs be filed, in light of the opinions of the Supreme Court of the United States in Roberts v. Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637, *399 released June 6, 1977, and Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974. Pursuant to this order, the attorneys for the appellant, as well as the State of Alabama, complied, and appellant's attorneys did challenge the constitutionality of Title 14, Section 319, Code of Alabama 1940, under the aforesaid opinions.
This Court ex mero motu placed this cause on rehearing on August 30, 1977. The Supreme Court of Alabama, while this cause was pending on rehearing, has expressly upheld the constitutionality of Title 14, Section 319, Code of Alabama 1940, in Harris v. Alabama, Ala.Cr.App., 352 So.2d 460, released September 9, 1977.
Mr. Justice Embry, speaking for the majority, specifically noted:
"We do not deem it constitutionally required that the sentencing authority consider mitigating circumstances as a condition to imposing the death penalty under Section 319. However, in this case such factors were before the jury, the sentencing authority."
As in Harris, supra, the trial judge charged the jury, not only on murder in the first degree and the requisite elements, but also charged the indictment included murder in the second degree, pointing out that such did not require premeditation or deliberation, and that the punishment therefor was for a period of from ten years to life (Vol. II, R. pp. 159, 163-164).
Likewise in its oral charge, the trial court charged on the distinction between principal and accessory, dealt with the definition of aiding and abetting, as well as conspiracy.
Additionally, the able trial judge gave fourteen of the written charges requested by the appellant's attorneys, and among these were the following:
"I charge you that you are to judge the guilt or innocence of the Defendant on the basis of the evidence presented in this case, and that the prior convictions of the Defendant have no bearing on the Defendant's guilt or innocence of the charge now against him.
"The Court charges the jury that the burden of proof is never on the Defendant to establish a crime of which he is charged. If, upon consideration of all the evidence in this case, the jury finds that there is a reasonable doubt as to the guilt of the Defendant, they should acquit him.
"The Court charges the jury that each and every one of you is entitled to have his own conception of what constitutes a reasonable doubt of the guilt of the Defendant. Before you can convict this Defendant, the evidence must be so strong that it convinces each jury of Defendant's guilt beyond a reasonable doubt. If, after a consideration of all the evidence, a single juror has a reasonable doubt of the Defendant's guilt, then you cannot find the Defendant guilty.
. . . . .
"Murder in the Second Degree is the unlawful killing of another with malice aforethought, without the premeditation and deliberation of Murder in the First Degree.
"The law does not countenance the conviction of any person for an offense not contemplated, intended, or committed by him, and of which he had no knowledge that the offense was about to be committed.
"It is for you the jury to decide, however, from all of the evidence, first, whether Donald Thigpen participated in the alleged killing, and, if so, whether he did so knowingly and with knowledge of its purpose.
"You are charged that you should not give more credence to the testimony of a witness merely because of that witness' position as a State's witness."
It is clear therefore that as in Harris, supra, the trial jury here considered the mitigating as well as the aggravating circumstances under the facts in this case, and had the benefit of the foregoing charges.
Mindful of our obligation to consider this record most carefully, we have again reviewed same and determined that it is free of error. The sua sponte application for rehearing is herewith overruled.
*400 OPINION EXTENDED, APPLICATION OVERRULED.
All the Judges concur.
NOTES
[1] Tests reveal appellant's blood type to be "A" positive (Vol. II, R. p. 100).