This appeal from the denial of a petition for writ of coram nobis represents an effort by Donald Thigpen to avoid his sentence of death. Thigpen was originally convicted and sentenced to death in May of 1972 for the shotgun slaying of Cassie Lee Davis. On appeal of that conviction the sentence was reduced to life imprisonment pursuant to Furman v. Georgia,408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Thigpen v.State, 50 Ala. App. 176, 277 So.2d 922 (1973). It was while he was serving that life sentence that Thigpen escaped and was involved in the murder of Henry Lambeth. He was indicted and convicted under Title 14, Section 319, Code of Alabama 1940 (now Alabama Code Section 13-1-75 (1975)) which provides for a mandatory death sentence where a prisoner is convicted of first degree murder while serving a life sentence. Again Thigpen was sentenced to death. His appeal of this conviction was affirmed.Thigpen v. State, 355 So.2d 392 (Ala.Cr.App. 1977), affirmed,355 So.2d 400 (Ala. 1978).
Since both of his convictions were affirmed on direct appeal, Thigpen seeks relief by way of writ of error coram nobis. His collateral attack upon his 1972 conviction in Jefferson County was unsuccessful. Thigpen v. State, Ala.Cr.App., 372 So.2d 385
(1979). The present appeal concerns a denial of Thigpen's petition for writ of error coram nobis filed in Escambia County wherein he sought to overturn his 1975 conviction.
 I
Initially Thigpen argues that Title 14, Section 319, Code of Alabama 1940 (Alabama Code Section 13-1-75 (1975)), is unconstitutional in its present application. He contends that Section 319 has been applied only very rarely and in an arbitrary, selective, and capricious manner, alleging that only a few life-term prisoners have been prosecuted for first degree murder under Section 319, which requires the death sentence, while other life-term prisoners have been prosecuted for first degree murder under Title 14, Section 314, Code 1940 (now Alabama Code Section 13-1-70 (1975)), in which the death penalty is not mandatory. Title 14, Section 318, Code 1940 (Alabama Code Section 13-1-74 (1975)). In support of his argument Thigpen states that, since 1862 when Section 319 was enacted, the official reporter system of Alabama shows that it has only been applied eight times. Williams v. State, 130 Ala. 31,30 So. 336 (1901); Miller v. State, 145 Ala. 677, 40 So. 47
(1906); Johnson v. State, 183 Ala. 79, 63 So. 163 (1913);Bailey v. State, 211 Ala. 667, 101 So. 546 (1924); Williams v.State, *Page 403 239 Ala. 296, 195 So. 213 (1940); Alstin v. State, 248 Ala. 163,26 So.2d 877 (1946); Cobb v. State, 251 Ala. 505, 38 So.2d 279
(1949); Harris v. State, 352 So.2d 460 (Ala.Cr.App. 1976), affirmed, 352 So.2d 479 (Ala. 1977).
The constitutionality of Section 319 was recently upheld inHarris v. State, 352 So.2d 460 (Ala.Cr.App. 1976), affirmed,352 So.2d 479 (Ala. 1977). On direct appeal Thigpen's attorneys did not initially challenge the constitutionality of Section 319. Thigpen, 355 So.2d at 395. On rehearing and by direction of this Court the issue of constitutionality was presented.Thigpen, 355 So.2d at 399. Now Thigpen, armed with different counsel, seeks to present another reason for declaring Section 319 unconstitutional. Coram nobis does not serve the function of an appeal or a delayed appeal. Summers v. State,366 So.2d 336, 340 (Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979). "The writ is appropriate only when the petitioner's claim is based on facts which were not known and could not have been discovered with the exercise of reasonable diligence at the time of trial. . . . The writ will not lie where a remedy against the error complained of, though available, was deliberately or negligently not used at the trial that resulted in the judgment of conviction." Summers, 366 So.2d at 340. By raising certain challenges to the constitutionality of Section 319 on direct appeal a petitioner is effectively precluded from asserting additional grounds for challenge on a collateral attack of the same judgment where the newly asserted grounds could have been discovered with the exercise of reasonable diligence at the time of trial or direct appeal. A defendant should not be permitted to attack an issue in a piecemeal fashion in an effort to suspend indefinitely the execution of judgment.
Thigpen's evidence shows that Section 319 was totally unused for twenty-five years, between 1949 and 1974 when Johnny Harris (see Harris, supra) was indicted; that between 1961 and 1976, three life-term prisoners were prosecuted for first degree murder under Title 14, Section 318, Code of Alabama 1940 (Bobbie Joe Garner in 1959, Charles Harris in 1968, and Roosevelt Youngblood in 1969); and that in 1976 and 1977, three life-term prisoners were prosecuted for first degree murder under Alabama Code Section 13-11-2 (1975), Alabama's new Death Penalty Act. Thigpen relies upon the differences in punishments among each of the three sections to support his argument of unconstitutional application.
Section 319 states: "Any convict sentenced to imprisonment for life, who commits murder in the first degree while such sentence remains in force against him, shall, on conviction, suffer death." Until the decision of Furman v. Georgia,408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), first degree murder was punished in this State by death or life imprisonment at the discretion of the jury. Title 14, Section 318, Code of Alabama 1940. Under Alabama's new Death Penalty Act the punishment for any murder committed while the defendant is under a sentence of life imprisonment is death or life without parole. Alabama Code Section 13-11-2 (a)(6). This section was not effective when Thigpen killed Mr. Lambeth. After Furman the only sentence which could be imposed upon a conviction of the crime of murder in the first degree was life imprisonment.Hubbard v. State, 290 Ala. 118, 119, 274 So.2d 298 (1973). Thus, in order to seek the death penalty against Thigpen, Section 319 was the only statute under which the State could travel. In Thigpen's trial which resulted in the conviction he now attacks, while the death penalty was mandatory upon a conviction of first degree murder, the trial judge did instruct the jury on the lesser included offense of murder in the second degree and punishment that it carried (ten years to life).
Johnson v. State, 335 So.2d 663, 676 (Ala.Cr.App.), cert. denied, 335 So.2d 678 (Ala. 1976), involved the first degree murder prosecution pursuant to Section 318 growing out of the same events for which Johnny Harris was prosecuted for murder under Section 319. Johnson was not serving a life sentence.Johnson v. State, 54 Ala. App. 581, *Page 404 310 So.2d 504 (1975); Johnson v. State, 54 Ala. App. 586,310 So.2d 509 (1975). On appeal Johnson argued that he was a victim of selective enforcement and thus was denied equal protection of the laws.
 "In 1962, the United States Supreme Court, in the case of Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, said:
 `. . . the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore, grounds supporting a finding of a denial of equal protection were not alleged. . . .'
(Citations omitted.)"
The rule is well established that although a "law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights", there is a denial of equal protection of the law. Yick Wo v. Hopkins, 118 U.S. 356,6 S.Ct. 1064, 30 L.Ed. 220 (1886).
The essential elements of a claim of discriminatory enforcement are (1) that there was in fact some selectivity in enforcement, (2) that the selectivity was intentional, and (3) that the selectivity was based on some invidious or unjustifiable standard. 13 Am.Jur. POF.2d 609 at 624-625 (1977). The burden resting upon a party seeking to prove unconstitutionally discriminatory enforcement of the law is a heavy one.
 "Although there are no clear standards of the quantum and type of proof which are regarded sufficient to show discrimination, there are certain elements which must generally be proved, regardless of the procedure whereby the contention of discrimination may be raised, in order for the contention to succeed. It is insufficient merely to show that other offenders have not been prosecuted, or that there has been laxity of enforcement, or that there has been a conscious exercise of selectivity in enforcement, but there must be sufficient evidence presented to establish the existence of intentional or purposeful discrimination which is deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."
4 A.L.R.3d 404 at 410 (1965).
In United States v. Ruggiero, 472 F.2d 599, cert. denied,412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973), the defendant claimed a denial of equal protection in the prosecutor's decision to proceed against him under 18 U.S.C. § 1623 (false declarations before grand jury or court), rather than under § 1621, the general perjury statute, which requires the "two-witness rule" or the "corroboration rule" and authorizes less severe penalties.
 "The answer to this claim of discriminatory prosecutorial enforcement, see Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), lies in the settled rule that where criminal statutes overlap the government is entitled to choose among them provided it does not discriminate against any class of defendants. See, e.g. United States v. Eisenmann, 396 F.2d 565, 568 (2d Cir. 1968). No such class discrimination is shown here."
Ruggiero, 472 F.2d at 606.
See also Tollett v. Laman, 497 F.2d 1231 (8th Cir. 1974), cert. denied, 419 U.S. 1088, 95 S.Ct. 678, 42 L.Ed.2d 680 (1975).
Thigpen has presented no evidence of intentional selectivity or that the selectivity was based on some arbitrary or invidious standard. He has presented no evidence sufficient to raise an inference of discriminatory selection. His claim of unconstitutional enforcement of Section 319 is unfounded and not supported by the evidence.
 II
The issue of the trial jury and its consideration of the mitigating and aggravating *Page 405 
circumstances under Section 319 was decided adversely to Thigpen on his direct appeal. Thigpen, 355 So.2d at 399. He presents nothing new in this regard and is not entitled to a reconsideration of that issue.
The fact that Pedro Williams, a co-defendant who pled guilty, was only sentenced to ninety-nine years is of no legal consequence to Thigpen. In a case of crime admitting degrees of guilt, where the principal offender has been tried and convicted of one of the lower degrees, the one indicted as an aider and abettor can afterwards be tried and convicted of a higher degree. Bridges v. State, 48 Ala. App. 249, 263 So.2d 705
(1972).
 III
Thigpen's attack on the jury selection system from which his grand and petit juries were selected is made for the first time in his petition for writ of error coram nobis. It was not raised in the trial court in the original trial or on appeal. This constitutes a waiver. Thigpen v. State, Ala.Cr.App.,372 So.2d 385 (1979). A mere statistical disparity between the number of blacks presumed eligible for jury duty and the number actually included on the jury roll does not of itself establish a primary inference of invidious discrimination. Smith v.State, 364 So.2d 1 (Ala.Cr.App. 1978).
Thigpen's trial attorney did not attack the jury selection system because he did not think that it was "necessary". He had been practicing law for some twenty-one years. When questioned by Thigpen's counsel at the coram nobis hearing he testified that he knew that blacks and women were not systematically excluded from the jury system of Escambia County:
 "Well, from my experience in the trial of cases and can look at the people who serve on the juries."
* * * * * *
 "And then when the jury is impaneled for the trial I and most other attorneys are here the first day and you can look out in the audience and see whether they are white or Black or women. And that's how I know that they were not . . . well, it did not appear to me that they were systematically excluded because they were here in court."
* * * * * *
 "No, I did not know that it (jury selection system) violated the constitution."
Thigpen's trial counsel testified that he "represented this defendant to the very best of my ability" and that had there been anything that looked "suspicious" that would warrant any type of investigation into the manner of jury selection he would have "brought it up at the trial or prior to trial".
When Thigpen's counsel at his coram nobis hearing was asked by the trial court if she were attacking Thigpen's trial counsel's "competency as an attorney", she replied, "Absolutely not".
As in Thigpen v. State, Ala.Cr.App., 372 So.2d 385 (April 17, 1978), there was "no showing of fraud in the composition of the jury venires, nor has there been any evidence tendered remotely pointing to a fraudulent collusion which led to the appellant's original conviction. In the absence of fraud, matters which were known at the time, or which could have been discovered by exercising due diligence, cannot be raised on petition for writ of error coram nobis." Thigpen, at 387.
 IV
Thigpen's claim that the lower court's denial of funds for investigation and expert analysis and testimony in order to establish the allegations in his petition for writ of error coram nobis denied him equal protection of the law is without merit. Harris, 352 So.2d at 475.
A reading of Thigpen's petition convinces this court that he is seeking to use the writ as a delayed appeal of issues which could or have already been decided on direct appeal. He has shown no errors of fact not appearing on record and so important that if the trial court had known of them at the time of trial it would not have rendered the *Page 406 
judgment. Summers, 366 So.2d at 339. Thigpen has given no evidence that his "incarceration is due to failure to observe [the] fundamental fairness essential to every concept of justice". Johnson v. Williams, 244 Ala. 391, 394, 13 So.2d 683,686 (1943). The denial of the petition for writ of error coram nobis is affirmed.
AFFIRMED.
All Judges concur.